Palumbo, Appellant, *v.* Unemployment
Compensation Board of Review.

Argued December 18, 1941.

Before KELLER, P. J., CUNNINGHAM,
BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY,
JJ.

*Joseph M. Leib,* with him *Charles S. Solit* and *John
J. McDevitt, Jr.,* for appellant.

*R. Carlyle Fee,* Asst. Special Deputy Attorney General, with him *Charles R. Davis,* Special Deputy Attorney General, and *Claude T. Reno,* Attorney General,
for appellee.

OPINION BY RHODES, J., March 11, 1942:

Appellant was the proprietor of a restaurant in Philadelphia during 1937 and 1938 and until September, 1939. In September, 1937, he entered into a written contract with Bobby Morro, a musician, by which the latter agreed to furnish "leader and five musicians" as their agent to perform at appellant's restaurant six hours per night, six nights per week, for twenty-five weeks for the sum of $231.25 per week. A contract almost identical in its terms was executed by the same parties in September, 1938, for a period of twenty-six weeks. The contracts were subject to the rules of Local Union No. 77 of the American Federation of Musicians. During the periods covered by these contracts Morro himself acted as conductor of an orchestra of five musicians, which performed nightly at the restaurant. In September, 1939, Morro was not asked to return, and this terminated also the connection with the restaurant of four members of the orchestra, Morris Grossman, Raymond DeLaurentis, Louis DiRiego, and Frank A. Donadio. DeLaurentis had played only for the period covered by the second contract; Grossman from September 15, 1938, to March 15, 1939; DiRiego from March, 1938, to June, 1939; and Donadio throughout both periods. The five individuals filed claims with the Bureau of Employment and Unemployment Compensation. The claims were denied for want of any wage records; but on appeal to a referee and after testimony was given to establish wage records their claims were allowed and benefits ordered paid.

The referee in each case found as a fact that the claimant was employed by appellant as a musician at a weekly wage, and concluded that the claimant was eligible to receive unemployment compensation benefits. Appellant then appealed to the Unemployment Compensation Board of Review which, after hearing testimony, in a single opinion affirmed the decision of the referee in each case. The board based its decision

not only upon the referee's finding that the claimants were employed by appellant, but on the ground that claimants were engaged in employment within the meaning of section 4 (j) of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, art. 1, as amended, 43 PS §753. This section in part is printed in the margin.[1] Pursuant to article 5, §510, of the Act of December 5, 1936, P. L. (1937) 2897, 43 PS §830, an appeal by petition was taken to this court, and both grounds given for judicial review. The questions raised are (1) whether the board erred in its construction of section 4 (j); (2) whether under the provisions of section 4 (i) Morro was not an independent contractor, himself an employer, and therefore liable for the employer's contributions. Section 4 (i) of the Act, 43 PS §753, in part is printed in the margin.[2]

---

[1] "An individual performing services for remuneration in an employment subject to this act shall be deemed to be performing such services for wages, unless and until it is shown to the satisfaction of the department that— (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) that such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (c) that such individual is customarily engaged in an independently established trade, occupation, profession or business."

[2] "Whenever any employer contracts with or has under him any contractor or subcontractor for any work which is part of his usual trade, occupation, profession or business, unless such employer, as well as each such contractor or subcontractor, is an employer (as defined in the first paragraph of this subsection), the employer shall, for all the purposes of this act, be deemed to employ each individual in the employ of each such contractor or subcontractor for each day during which said individual is engaged in performing such work, except that each such contractor or subcontractor who is an employer (as defined in the first paragraph of this subsection) shall alone be liable for the employer's contributions measured by the wages payable to individuals in his employ, and except that any employer who shall

The scope of review of this court on appeal from the Unemployment Compensation Board of Review is defined by article 5, §510, of the Act, 43 PS §830, as follows: "In any appeal to the Superior Court the findings of the board or referee, as the case may be, as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive, and in such cases the jurisdiction of the court shall be confined to questions of law ......"

The referee's findings were undisturbed by any action of the board. The board made no findings of fact of its own, and apparently concurred in the referee's findings by saying: "Being thus parties to the same contract as Bobby Morro they stand in substantially the same position with reference to Palumbo as Morro." The board was of the opinion from the facts established that "Morro was subject to control over the performance of his services by Palumbo." See *Healey v. Carey, Baxter & Kennedy, Inc., et al.,* 144 Pa. Superior Ct. 500, 504, 19 A. 2d 852.

The determination that the claimants were appellant's employees placed claimants clearly within the coverage of section 4(j), and if permitted to stand eliminates the contention that Morro was an independent contractor under section 4 (i). We think the only question before us is whether the testimony is sufficient to support the referee's findings. *J. G. Leinbach Co., Inc., v. Unemployment Compensation Board of Review,* 146 Pa. Superior Ct. 237, 22 A. 2d 57. It is our conclusion that the testimony is sufficient, and that the record supports the view that the relation of all the claimants with appellant was that of master and servant, employer and employee. There was testimony by

_____

become liable for, and pay contributions with respect to individuals in the employ of any such contractor or subcontractor who is not an employer (as defined in the first paragraph of this subsection), may recover the same from such contractor or subcontractor."

Morro that he first joined the orchestra at appellant's restaurant in 1933, and that he continued under various leaders until appellant asked him to become the leader. He testified that appellant then decided to call the unit "Bobby Morro and His Orchestra." Appellant testified that this title was used in a sign hung over the orchestra platform in his restaurant, and that he bought and designed it. It also appears in the testimony that appellant required the members of the orchestra to wear formal dress, or to dress as otherwise directed. There was conflicting testimony as to whether appellant instructed Morro as to the type of music to play. Morro testified he did. Appellant controlled the conduct and activities of the musicians in many respects. He assigned them to their places, fixed the hours of intermission, the time to come in, and the time to play; and he set the time for rehearsals with floor shows. He paid the advertising expenses, and furnished the band stand and the decorations.

The personnel of the orchestra under Morro's leadership consisted originally of some of the musicians who performed under the previous leader; but generally, as occasion required, members were obtained by Morro at meetings of Local Union No. 77 of the American Federation of Musicians. Appellant was described as listening to proposed new members, and telling Morro that if they merited his approval they were to be hired. At the beginning of Morro's leadership some changes occurred because appellant increased the size of the orchestra. Morro did not undertake to discharge any musician without first reporting to appellant and obtaining his permission. If a musician was not performing his duties to the satisfaction of appellant, Morro would "get rid of him" (106a). Appellant endeavored to discharge one of the musicians on one occasion, but was unsuccessful in doing so, not because of any objection or opposition by Morro, but because of the regulations of the local musicians' union. On that

occasion Morro went to the union, in pursuance of appellant's request, and sought to effect the discharge. When a member of the orchestra left voluntarily Morro reported to appellant who approved the change.

Appellant suggested to Morro the addition of Morris Grossman, one of the claimants, to the orchestra. Appellant also suggested the hiring of Earl Denny, another musician, and he made similar suggestions for the engagement of "guest conductors" and "singers." Morro carried out appellant's suggestions. Additional salaries were paid by appellant to Morro, who paid the individuals involved.

Although the compensation of the orchestra was paid Morro in a lump sum, and by him distributed to the musicians, their wages were fixed by union scale, and were under no control by Morro. There was also testimony that if there had been a default in the payment of wages the musicians would not have looked to Morro but to appellant for payment. Furthermore, the purpose of the contract originally was not to reserve any control to Morro, but to make possible for appellant a saving under the union regulations of the higher compensation fixed for services for a single engagement.

The testimony was conflicting as to some of the circumstances which we have above summarized, but any conflict in the testimony was for the referee and the board to resolve. The finding that the claimants were employed by appellant as musicians at a weekly wage is, in our judgment, not without support of sufficient substantial evidence, when looked at in the light most favorable to claimants.

In *Gordon et al. v. Tomei et al.*, 144 Pa. Superior Ct. 449, at page 465, 19 A. 2d 588, at page 595, a case involving wrongful interference with the employment of members of a theatre orchestra, we said: "The legal relation of the theatre and defendant association seems clearly that of parties agreeing upon the supply of labor, and the relation of the theatre and the members

of the orchestra that of employer and employee. It is impossible from the record before us to say that Saporeta was the employer of the orchestra; there was no evidence of a single instance in which he controlled the performance of their duties except in conducting the orchestra, while by article XVIII, sections 8 and 9, of the by-laws of defendant association he was without power to discharge any one of them except for good cause in the judgment of the trial board."

In *McCracken v. Slemmer et al.*, 112 Pa. Superior Ct. 135, at page 138, 170 A. 453, at page 454, where a musician in an orchestra engaged under a contract similar to the contracts in the present case asserted a wage preference in a proceeding under a distress for rent, we said, in rejecting his contention, that: "We think the contract of employment in this case excludes, by its terms, the legal conception of the relationship of master and servant, viz., that a servant is one employed to render personal services to his employer, otherwise than in the pursuit of an independent calling, and in such service remains so entirely under the control and direction of the employer that the latter has the right to select and discharge the servant and to direct both what work shall be done and the manner in which it shall be performed." We would be inclined to agree to the applicability of that case if the present controversy resolved about the terms of the contract only. But when we consider appellant's control over the orchestra at his restaurant the terms of the contracts between Morro and appellant in the case before us cannot be accorded the finality given in *McCracken v. Slemmer et al.*, supra. We think this is especially so when it is recognized that the contracts were devices adopted for appellant's advantage.

In *Steel Pier Amusement Co. et al. v. Unemployment Compensation Commission et al.*, 127 N. J. L. 154, 21 A. 2d 767, the facts, including the contract, are similar to those of the present case. There a contract was

executed between the amusement company and the orchestra leader. Following the termination of the services of the orchestra by the company one of the members made claim for benefits under the New Jersey unemployment compensation statute of which some provisions are almost identical with those of the Pennsylvania act. For example, the New Jersey statute provides (R. S. 43:21-19 (i) (6)): "Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the commission that (A) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; ......" The court, in holding the claimant an employee of the amusement company, said (21 A. 2d 767, at page 769): "A reading of the testimony leaves no doubt that the musicians were not free from control or direction of the Steel Pier. They were subject to its control as to the time of performing, and likewise as to what they should play, if the Steel Pier expressed any such desire. They did in fact play dance music or accompaniments as directed. It is clear that Bartha was merely agent for the hiring of the men and was, for all practical purposes, a foreman. The musicians accommodated themselves to the needs and demands of the Steel Pier, and in fact took orders from and were under the control of the Steel Pier."

*In re Rogavin's Claim*, 259 App. Div. 774, 18 N. Y. S. 2d 302, and *Ajello v. Savarins Management, Inc.*, 259 App. Div. 949, 19 N. Y. S. 2d 886, are cases which hold that members of an orchestra engaged by contract with the conductor were employees of the establishment where their services were rendered. We recognize that the facts and circumstances of those cases differ somewhat from those of the case at bar. The written agreement in the Rogavin case reserved to appellant, as stated in the court's opinion, the right to direct and

control in many respects the manner in which the members of the orchestra were to perform their services, although the particulars are unspecified. In the Ajello case it was agreed that the rules of the local union of the American Federation of Musicians would control the agreement, which provided that the members of the orchestra were employees of the establishment and the conductor the agent of both in effecting the employment.

In *Williams v. United States*, 38 F. Supp. 536 (District Court, N. D. Illinois, E. D.), Williams sued for refund of contributions which he had made, supposing himself an employer, under section 804 of Title VIII of the Social Security Act of 1935, as amended, 42 U. S. C. A. §1004. He was the leader of an orchestra of twelve or fourteen men which, during 1938, filled twenty-two engagements at hotels, restaurants, night clubs, ballrooms, amusement parks, etc., from Chicago to the west coast. These were arranged between plaintiff's booking agent and the establishment requiring the music, by written contract fixing the date, hours, place, and total compensation for the performance. Among other facts, it was found that the contracting establishment was unconcerned with the identity of the members of the ensemble, in the personnel of which plaintiff made seven changes during 1938, or with their individual compensation, which was agreed upon between it and plaintiff, and was at, or above, the union scale. On the other hand, it was found that the establishment undertook responsibility for procuring licenses for the performance of copyright music; bore the expense of advertising the attraction; sometimes engaged plaintiff's orchestra with the expection of profit; determined the number of musicians to be employed and their instrumentation; furnished facilities such as lights, music stands, amplifying equipment, etc.; assigned the orchestra its place on the premises, and the musicians their quarters; gave instructions as to the route of passage from their quarters to the place of performance;

regulated their dress and conduct when not performing, such as visiting guests; required accompaniment of other musical talent separately provided; governed radio broadcasting, the style, length, tempo, volume, and choice of selections, and the order of the program. On these facts the court held that plaintiff was not the employer of the musicians, and ordered a refund of his payments.

It does not seem that the degree of control evidenced by the circumstances related in the Williams case exceeded appellant's control over the orchestra in the present case. The comparative permanence of appellant's engagement of Morro's orchestra as against the twenty-two different engagements over a wide territory of the Williams orchestra indicates, if anything, to our minds, the likelihood of a greater degree of control by appellant.

Appellant has referred in his brief to a number of cases[3] which hold that orchestra musicians were not the employees of the party contracting with the orchestra leader for their services. The facts upon which these decisions rested differ sufficiently from those of the case before us to make them less persuasive than the authorities to which we have referred.

The decision of the board affirming the decisions of the referee in all the cases is affirmed.

---

[3] *Hill Hotel Co. v. Kinney et al.,* 138 Neb. 760, 295 N. W. 397; In re Earle, 262 App. Div. 789, 27 N. Y. S. 2d 310, affirmed 286 N. Y. 48, 36 N. E. 2d 453; Claim of Miller, 262 App. Div. 385, 29 N. Y. S. 2d 15; *Unemployment Compensation Commission v. Mathews,* 56 Wyo. 479, 111 P. 2d 111; In re Brown, 260 App. Div. 972, 23 N. Y. S. 2d 330; In re *Ten Eyck Co., Inc.,* (District Court, N. D. New York), 41 F. Supp. 375.