# Dawkins Unemployment Compensation Case.
# Sun Shipbuilding and Drydock Company Appeal.

Argued March 10, 1947. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross and Arnold, JJ.

*John D. M. Hamilton,* with him *Harold Scott Baile* and *Pepper, Bodine & Stokes,* for appellant.

*Roland M. Morgan* and *Charles R. Davis,* Special Deputy Attorney General, with them *T. McKean Chidsey,* Attorney General, for appellee.

OPINION BY RENO, J., April 16, 1947:

The bureau, referee and board allowed unemployment compensation to the claimant, Perkins Dawkins. His base-year employer, Sun Shipbuilding and Dry Dock Company, appealed to this court.

The board found: "1. The claimant was employed by the Sun Shipbuilding & Dry Dock Company, Chester, Pa., from October 20th, 1942 until August 4th, 1945. 2. A month previous to August 4th, 1945 claimant gave his employer notice that he was going to resign for the specific purpose of going into business for himself. 3. The Monday following his resignation claimant started doing jobbing work, as a roofer. Claimant bought equipment, supplies, tools, etc., and tried to build up a paying business and was averaging about $35.00 per week. He continued in this business until November, but finally had to give it up as the man who got the material for claimant while he was in the roofing business, was unable to continue getting it for him as his son came home from the Army and he had to take care of him. This business could no longer succeed without the necessary materials and claimant was forced to abandon it." The findings of fact are supported by the evidence and are binding upon us. Unemployment Compensation Law, §510, 43 PS §830.

The claimant was, at the time of his separation, 57 years old. He had worked three years for his base-year employer, but after the termination of the European war and when the fall of Japan was imminent he became apprehensive of his future. He felt that at his age he would encounter serious difficulty in holding his

employment or securing other work. As a matter of fact, according to the testimony of the employer's witness, he would have been assured of work with the Sun Company only until December, 1945. These circumstances produced the conviction that he should endeavor to start and build up an individually owned business.

The board's conclusion was: "On the basis of these Findings, the Referee properly concluded that the claimant cannot be disqualified under the provisions of Section 402 (b) of the Law. The unemployment for which claimant seeks benefits was due to the failure of a business enterprise and not to voluntarily leaving work, and for this reason he must be found eligible for benefits with respect to the provisions of the Unemployment Compensation Law."

It cannot be doubted that *after* his business failed claimant was unemployed within the meaning of the statutory definition of unemployment. "An individual shall be deemed unemployed with respect to any week during which he performs no services and with respect to which no remuneration is paid or payable to him, or with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate . . ." Id. §4 (u), 43 PS§753. Under the definition, claimant clearly was *not* unemployed until his business failed. In the interim, between the date when he left his employment and the failure of his business, he was employed since he received *remuneration* for services rendered in his business.

No contention is made in respect of claimant's qualifications under §401, 43 PS §801. He filed his application for benefits on August 30, 1945, and his benefit year began on that day. Id §4 (b), 43 PS §753. His base period was the calendar year of 1944. Id §4 (a), 43 PS §753. The record establishes that he had been paid sufficient wages during his base year to entitle him to benefits, had registered for work and filed a valid application

for benefits, was able and available for suitable work and unemployed during the required waiting period. His claim for benefits was allowed after the one week waiting period of November 14, 1945, and he became compensable on November 21, 1945.[1]

Appellant asserts that claimant is disqualified under the ineligibility section of the act which, so far as it is pertinent here, provides: "An employe shall be ineligible for compensation for any week—(b) In which his unemployment is due to voluntarily leaving work without good cause". Id. §402, 43 PS §802. That provision is incapable of carrying the construction appellant places upon it, and the board properly rejected it.

In that context, the idiomatic phrase "due to" connotes a causal relation. It means caused by, in consequence of, or owing to. It is the equivalent to, or synonymous with, such accepted phrases as, "caused by", "resulting from", "sustained by", "sustained by means of", and "sustained in consequence of". 28 C. J. S., p. 579. It imports into unemployment compensation legislation the theory and principles of legal causation. Thus read the statute means that the disqualification applies only where the claimant's unemployment was actually caused by or resulted from his act in voluntarily leaving his employment without good cause.

Claimant did not become unemployed in consequence of leaving his employment. After he left appellant's employment he received remuneration for services ren-

---

[1] It will be noted that had claimant remained in appellant's employment he would nevertheless have been laid off in December 1945. His benefit year would have begun at that time and appellant would still have been his base-year employer. He would have received the same amount and number of instalments of benefits. The only effect of his ad interim self-employment was to accelerate his unemployment compensation by two or three weeks, and this action injured neither his employer's merit-rating nor the State's unemployment compensation fund. Cf. Berdan v. Unemployment Compensation Board of Review, 153 Pa. Superior Ct. 49, 33 A. 2d 264.

dered and, as already demonstrated, he was *not* unemployed until his business failed. The failure of his business was the real, immediate, and moving cause of his unemployment. Leaving his employment was the first step, but only the first step, in the pathway to unemployment. It was the first in the sequence of events which resulted in his ultimate unemployment, but it was not, to borrow the language of another and analogous field of the law, the proximate cause of his unemployment. Leaving his employment was a remote cause, and therefore his unemployment was not, in the words of the act, "due to voluntarily leaving [his] work". And, unless it shall be said that a man who fails in his endeavor to establish in good faith a business for himself is culpable, it must also be said that he was "unemployed through no fault of their [his] own." Id. §3, 43 PS §752.

Hence we do not squarely meet appellant's contention that claimant's voluntary separation to engage in his own business was not justified by a good cause. The question may linger upon the periphery of the case, but it does not lie at the center of the controversy. But, even so, the concept of good cause, which so far has been only tentatively defined,[2] contains no factor which operates to deny compensation to claimant. Unless good cause is to be entirely denuded of its subjective element and judged wholly objectively, the laudable ambition to be independently self-supporting must be taken into consideration in the formulation of a definition of that flexible phrase. The most attractive feature of what we have been lately calling the American system of free enterprise is the liberty of choice open to all men. The right to choose to work for one's self in his own business

---

[2] "Until more cases involving a wide variety of factual situations have been brought to the courts, judicial answers will necessarily lack the usual rigor of legal formulas, and tend to be tentative and groping in their nature. Concrete cases will develop general principles, and precise definition will isue from the wisdom acquired by greater experience": Sturdevant Unemployment Compensation Case, 158 Pa. Superior Ct. 548, 554, 45 A. 2d 898.

or to work for another is fundamental, and the law places no obstacle in the way of men to strive for what they regard an improvement of their economic environment. To the contrary, laying aside mere pedantic conceptions, it must be a good cause which animates a man to seek the fullest expression and amplest development of his highest skills and capacities, and to strive for steady employment, be it in his own business or in service for others. Whether or not an individual claimant is also motivated by good faith is naturally a relevant and the controlling factor, and this must be decided in the light of all the testimony. In this case claimant's good faith has not been impugned, nor could fault be found with his judgment if that were material.

Appellant's position would require us to hold that an employe is without good cause who, faced by an imminent lay-off, seeks economic security without recourse to the compensation law. His genuine desire to work and be self-supporting would go for nought. Cf. *Brilhart Unemployment Compensation Case,* 159 Pa. Superior Ct. 567, 49 A. 2d 260. We cannot adopt that position. Were it to prevail there would be no inducement for an unemployed person to avoid resort to the act by seeking temporary work in uncovered employment, by engaging in part-time business on his own account, or by any other commendable and legitimate device.[3]

Nor can we sustain appellant's further contention that claimant forfeited his right to benefits because at the time he claimed them he was not an employe within

---

[3] Our extensive research has unearthed no court opinion upon the question here raised. It has, however, been frequently decided by state administrative agencies. The overwhelmingly predominant weight of the authorities at the administrative level in states, as in Pennsylvania, where personal reasons provide good cause for leaving employment, is in line with our conclusion. Of course in states where the statutory or decisional law requires that good cause be connected with or arise from the work or attributable to the employer or the employment the decisions are contra. The decisions are published by the Social Security Board in Unemployment Compensation Interpretation Service: Benefit Series.

the definition of that term. Id. §4 (h), 43 PS §753. Nothing in the act requires a claimant to stand in an employe-employer relationship at the initial determination of his eligibility to benefits. See, e. g., §501, 43 PS §821. The section of the act, §401, supra, which prescribes all the conditions which he must meet in order to obtain its benefits, does not require that he shall then be an employe. The definitions in the act of employer and employe serve only to describe and limit the persons who are brought within its sweep. By them the taxability of the employer and the right of the employe to share in the fund raised from the employer's contributions are determined. They fix the status, identify a given employe with a known employer and his pay-roll, and establish prima facie a claimant's right to benefits. *Leinbach Co., Inc., v. Unemployment Compensation Board of Review,* 146 Pa. Superior Ct. 237, 22 A. 2d 57; *Palumbo v. Unemploy. Comp. Board,* 148 Pa. Superior Ct. 289, 25 A. 2d 80; *American Writing Machine Co. v. Unemp. Comp. Board,* 148 Pa. Superior Ct. 299, 25 A. 2d 85; *Superior Life, Health & Accident Ins. Co. v. Unemp. Comp. Bd.,* 148 Pa. Superior Ct. 307, 25 A. 2d 88. Beyond that they perform no function. When, under the definitions, it is discovered that two persons bear the relation of employer and employe in covered employment, and that claimant has a right to benefits, the definitions have served their full purpose. The right to benefits is not conditioned upon the existence of the employer-employe relationship at the time the application is filed or its continuance during the period the benefits are paid. When an application and a claim for benefits has been filed, and the claimant has registered for work, and it has been found that the claimant *was* an employe of the employer, the further question is whether the employe's earnings during his base year were sufficient to permit compensation in his benefit year. When that question is resolved in his favor claimant is entitled to the benefits he has *earned* during his base period in the

amount and for the period prescribed by the statute but only if and so long as he is "able to work and available for suitable work." Id. §401, supra. These are the only requirements prescribed by the statute, and there is not a line in it which by the most distorted or fanciful construction could be held to demand the maintenance of the employer-employe relation as a further condition to the receipt of benefits or to require more than continued ability and availability for work.[4]

Decision affirmed.

---

[4] The question of eligibility to benefits by one who has been self-employed has usually come to the attention of the unemployment compensation authorities in other states upon the allegation that during the period claimant engaged in business for himself he was not available for employment, that is, by self-employment he had taken himself out of "the labor market". That contention has not been made in this case, either below or in this court, and the record does not contain evidential data upon which a decision could be predicated. In reviewing decisions of administrative agencies we apply the general rule governing all appeals, and do not consider questions not raised below. Middletown Borough v. Pa. P. U. C., 143 Pa. Superior Ct. 444, 17 A. 2d 904.