DOROTHY F. MOULTON, Appellant, v. IOWA EMPLOYMENT SE-CURITY COMMISSION, Appellee; STATE AUTOMOBILE INSURANCE ASSOCIATION, Defendant.

No. 47284.

(Reported in 34 N. W. 2d 211)

OCTOBER 19, 1948.

James R. Barkley, of Moulton, and B. J. Powers, of Des Moines, for appellant.

F. D. Riley, of Des Moines, for Iowa Employment Security Commission, appellee.

Gibson, Stewart & Garrett and Matthew J. Heartney, Jr., all of Des Moines, for State Automobile Insurance Association, defendant.

BLISS, J.—The claimant-plaintiff is a married woman whose husband was employed by a railroad company operating between Des Moines and the town of Moulton, the home of claimant. From September 9, 1943 until February 24, 1945, claimant was employed as a key-punch operator by the defendant State Automobile Insurance Association at its office in Des Moines, Iowa. Because of sickness and discomfort due to her pregnancy, she first quit work on January 13, 1945, and after returning for two weeks of work she ceased working for defendant on February 24, 1945. Her baby was born on July 24, 1945. The record clearly establishes that she quit her work because of pregnancy.

She so testified at two or three hearings, and in her claim for compensation which she filed on December 22, 1945 she stated: "My reason for leaving the firm was because of pregnancy and my inability to continue work." She was not discharged or dismissed. Her sister was a supervisor for defendant. She had no authority to discharge employees or to give them leave of absence, but when the claimant told her of her disability she advised claimant to discontinue work. Robert McKee was defendant's manager. Claimant did not talk with him before quitting, but he learned from her sister that she quit work because of her pregnancy. He testified:

"She said her health was bad, and we couldn't blame her for leaving. One time after she left she stopped in and said her husband was working on the railroad from Des Moines to Moulton and they might as well live in Des Moines if they had a place to live and wondered if she could come back to work. I said she could. We would have been glad to have her back at any time and probably paid her a little more money. * * * There was no scheduled leave of absence but it was when her health got better she could come back."

Because of housing conditions, care of the baby, and difficulty of transportation, claimant never accepted defendant's offer of re-employment.

In a hearing upon her claim, the Commission's deputy, on January 25, 1946, determined that she left her employment with defendant voluntarily, without good cause attributable to the employer, and thus disqualified herself from receiving unemployment benefits based on wage credits accrued prior to said date. The appeal tribunal affirmed this decision on July 19, 1946. On hearings before the Commission on August 27 and September 10, 1946 that tribunal, with two members concurring and one dissenting, modified and affirmed the decision of the appeal tribunal by holding that she had not met the requirements of section 96.5, subsection 1, Code, 1946, by establishing that her quitting work was not voluntary, and that she was able and available for work, as required by Code section 96.4, subsection 3.

The first of these sections provides that: "An individual

shall be disqualified for benefits: 1. *Voluntary quitting.* If he has left his work voluntarily without good cause attributable to his employer, if so found by the commission."

The second section provides: "An unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that: * * * 3. He is able to work, and is available for work."

As authorized by section 96.6, subsections 8–11, Code of 1946 (section 1551.12, subsections H, I, J, and K, Code, 1939), claimant appealed from the decision of the Commission to the district court. Subsection 9 of 96.6 provides that the appellate review shall be on the certified record of the hearing before the Commission, without additional evidence; in the absence of fraud any finding of fact by the Commission shall be binding upon the court on appeal, when supported by substantial and competent evidence; such action shall be heard in a summary manner; and (subsection 10) "any order or decision of the commission may be modified, reversed, or set aside on one or more of the following grounds and on no other: * * * 3. If the facts found by the commission do not support the order or decree. 4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

After an able discussion of the case the court made its findings of fact and conclusions of law, and on July 12, 1947 entered its judgment and decree "that the determination of the Commission that the appellant quit her work voluntarily without good cause attributable to her employer is supported in the record by substantial, competent evidence and that such finding and determination * * * must be affirmed. On the second issue, the court finds that the undisputed evidence shows that appellant was available for suitable work." On the first issue the court denied claimant all benefits based on wage credits prior to February 24, 1945, the date of separation.

Since the decision of the court is based solely on the first question—whether claimant voluntarily quit without good cause attributable to her employer—and there is no challenge by anyone to the decision of the court that she was available for work, we do not consider or determine that issue.

I. On the first issue we fully agree with the decision of the majority of the Commission and the judgment and decree of the trial court. That issue may be divided into two parts: first, whether her quitting was voluntary on her part, and, second, was it without good cause attributable to her employer.

The first part narrows down to the single question whether the physical disability of the claimant due to her pregnancy made her quitting work voluntary or involuntary. Under any accepted or reasonable definition of the words "voluntary" or "voluntarily", we think it must be said that her quitting was of her own volition or choice. No doubt she would have preferred continuing her work for defendant had her physical condition permitted. But her condition was due to her own deliberate, voluntary act and choice. The fact that she could not work because of her physical disability did not make her quitting involuntary, under the facts, or under a reasonable construction of said section 96.4, subsection 3, or of the legislative act as a whole. See Margoris v. United States Railroad Admn., 187 Iowa 605, 608, 174 N. W. 371. Claimant's case has some analogy to that of one who deliberately maimed himself to unfit himself for work. Numerous courts have held that one, if not the main, purpose of such legislation is to relieve hardship caused by *involuntary* unemployment. Fash v. Gordon, 398 Ill. 210, 75 N. E. 2d 294; Kontner v. Unemployment Compensation Board, 148 Ohio St. 614, 76 N. E. 2d 611; W. T. Grant Co. v. Board of Review, 129 N. J. Law 402, 29 A. 2d 858; Ex parte Alabama Textile Products Corp., 242 Ala. 609, 7 So. 2d 303, 141 A. L. R. 87, annotation 101.

In Labor and Industry Dept. v. Unemployment Compensation Board, 133 Pa. Super. 518, 521, 3 A. 2d 211, 213 (Bush claim), the court said:

"The word, 'voluntarily', may be used in a number of different senses, but, in our opinion, having regard to the purpose and intent of the act * * * but with special reference to its declaration of public policy * * * and its fourth article, which prescribes the qualifications required to secure compensation and enumerates the causes which will make an employe ineligible for compensation, the most appropriate meaning or

definition is, 'Of one's own motion' (Century Dictionary); 'of one's own accord' (Oxford Dictionary); 'acting of one's self' (Webster's New International Dictionary). When we say, 'He left work voluntarily,' we commonly mean, he left of his own motion; he was not discharged. It is the opposite of a discharge, dismissal or lay-off by the employer or other action by the employer severing relations with his employes, to provide against which the act was mainly designed."

The claimant cites no decision or authority that a discontinuance of work because of pregnancy is an involuntary quitting within the contemplation of such legislation as is involved herein, and we have found none. In John Morrell & Co. v. Unemployment Comp. Comm., 69 S. D. 618, 13 N. W. 2d 498, 499, 500, the Commission found as follows:

" 'Claimant is a married woman whose employment with John Morrell and Company began July 11, 1938 and continued until March 26, 1941. On that date claimant resigned due to her advanced pregnancy. The birth of the child occurred on July 19, 1941. After fully recovering from her confinement claimant made such arrangements for the care of the child during her working hours to permit her to return to work, applied for reinstatement to her former position or for other suitable work. Upon her failure to be reinstated to her former position or any other, she registered for employment * * * and simultaneously applied for benefits. At the time of her separation, March 26, 1941, claimant's physical condition, due to pregnancy, was such that continuing to work endangered her health, and the separation was necessitated by her approaching confinement.' "

The deputy commissioner, the appeal tribunal, and the commission each sustained the allowance of benefits. On the employer's appeal the circuit court, in reversing the decision, said :

"Without giving the word 'voluntarily' in section 17.0830(1), supra, an exact definition, we think that it would do violence to the intent and purpose of the statute to hold under the facts

in this case that claimant did not 'voluntarily' leave her employment."

Other cases holding that the quitting of work because of pregnancy disqualified the employee from obtaining unemployment compensation benefits, because quitting 'for that reason was voluntary and without good cause, are In re Steinberg, 263 App. Div. 916, 32 N. Y. S. 2d 197, and Hutzler Bros. Co. v. Maloy, Md. (Baltimore Superior Court) section 29.519, 3 Prentice-Hall Social Security Tax Service. See, also, Woodmen of the World Life Ins. Soc. v. Olsen, 141 Neb. 776, 4 N. W. 2d 923.

In Michigan's Unemployment Compensation Act, there has been, and still is, after some amendment, section 29(1)(e), Act No. 360, Pub. Acts 1947, which provides:

"An individual shall be disqualified for benefits: * * * (e) For the duration of her unemployment when it is found by the commission that total or partial unemployment is due to pregnancy." 12 Mich. Stat. Ann., 1947 Cum. Supp., section 17.531.

In Packard Motor Car Co. v. Michigan Unemployment Comp. Comm., 320 Mich. 358, 31 N. W. 2d 83, the court divided as to the legislative intent in the enactment of this 1947 amendment.

II. When unemployment compensation legislation was first enacted in many of the states, the section pertaining to disqualification for benefits provided only for the discontinuing of "work voluntarily without good cause." Later there was a general movement to tighten the section to prevent unwarranted depletion of the reserve fund. Many states then amended the section by adding just following the words "voluntarily without good cause" the words "attributable to the employer". This was true of the Iowa legislation. The words "attributable to the employer" did not appear in the original Act. (Chapter 4, Laws of Forty-sixth General Assembly, Extraordinary Session, and chapter 102, Laws of Forty-seventh General Assembly.) But, by chapter 64, Laws of Forty-eighth General Assembly, that section (5) of chapter 102, was amended to read: "Sec. 5.

An individual shall be disqualified for benefits: 5 (a). If he has left his work voluntarily without good cause attributable to his employer, if so found by the commission." This change in the legislation and the significance was noted in Iowa Public Service Co. v. Rhode, 230 Iowa 751, 755, 756, 298 N. W. 794.

There was the same legislative change made in the Unemployment Compensation Law in South Dakota, as noted in John Morrell & Co. v. Unemployment Comp. Comm., supra, 69 S. D. 618, 13 N. W. 2d 498, 500, in which case the facts arose before the amendment to the statute. But notwithstanding this fact, the court held that the legislature intended the section before its amendment to have the same meaning as was more clearly and definitely expressed by the section as amended. Speaking of the pregnancy of the claimant as having made necessary her quitting work, the court said:

"We agree that the claimant was justified in leaving her employment, but it does not follow that she was entitled to unemployment benefits. It appears to us from a consideration of the act that the legislature did not intend that employees who leave their work for reasons not attributable to or connected with their employment should receive benefit payments. * * * We are also of the opinion that claimant left her employment 'without good cause' within the meaning of that phrase as used in the act. Under the 1943 amendment of section 17.0830 (1), supra, to which we have referred, a claimant must establish when his claim is premised upon quitting his work with good cause that such cause was 'attributable to the employer or the employment.' Appellants argue that the legislature in adopting the amendment must have intended to make some change in the existing law. A change in a statute may be made to express more clearly the original intention of the legislature. We think because of the apparent purpose and intention of the legislature determined from a consideration of the entire act and the declaration of public policy that the effect of the section before amendment was to require a showing of good cause attributable to the employment and that the amendment was enacted to express more clearly such intention."

In support of the rule of statutory construction just stated see also 59 C. J., Statutes, 1097, section 647; 1 Sutherland, Statutory Construction (1943) Third Ed., section 1930, page 415 et seq., and section 1931; 50 Am. Jur., Statutes, section 337, and cases cited.

In Minnesota the Unemployment Compensation Law in 1943 was amended to include the words "attributable to the employer" in the disqualification section. Thereafter in Fannon v. Federal Cartridge Corp., 219 Minn. 306, 18 N. W. 2d 249, 158 A. L. R. 389, it was held that the illness and disability causing the claimant to leave her employment must have been directly connected with her employment.

Pennsylvania never amended its Unemployment Compensation Act to include in the disqualification section (43 Pa. Stat. Ann., section 802) the words "attributable to his employer or his employment." That section states that the employee shall be ineligible for compensation for any work "in which his unemployment is due to voluntarily leaving work without good cause: * * *." In Sun Shipbuilding and Dry Dock Co. v. Unemployment Compensation Board, January 5, 1948, 358 Pa. 224, 231, 233, 236, 56 A. 2d 254, 258, 259, 260, the supreme court reversed the superior court for granting unemployment benefits to one who quit his job to go into a business for himself, which failed and left him unemployed (160 Pa. Super. 501, 52 A. 2d 362). The supreme court reviewed and criticized some decisions of the superior court which had dispensed compensation under a too liberal interpretation of "good cause." The supreme court said:

"* * * the fact that a laudable motive for leaving employment and a 'good cause' within the meaning of the Act are entirely different things. * * * To hold that a married woman who quits her job to join her husband in a new domicile is voluntarily becoming 'unemployed' for a 'good cause' within the meaning of the Act is to open the door to so much fraud on employers that one may doubt that such a construction of the Unemployment Compensation Act conforms to the canon that 'all laws should receive a sensible construction': per FIELD, J., in United States v. Kirby, 7 Wall. 482, 486 [19 L. Ed. 278],

cited with approval in Watson v. Witkin, 343 Pa. 1, 6 [22 A. 2d 17]. In this last cited case we quoted with approval what Judge CARDOZO said in In re Rouss, 221 N. Y. 81, 116 N. E. 782, as follows [343 Pa. 1, 14, 22 A. 2d 17, 23] : 'Statutes must be so construed, if possible, that absurdity and mischief may be avoided.' "

And, notwithstanding the words "attributable to the employer" are not in the Pennsylvania statute, the court said:

"The 'good cause' which justifies an employe's terminating his relations with his employer must, other than in those exceptional cases where reasons 'personal to the employe' may under a certain state of facts be adjudged 'good', *be one connected with his employment. * * ** Even in matters connected with his employment there must be some limit to the legally approved list of 'good causes' for quitting employment." (Italics supplied.)

And in Barclay White Co. v. Unemployment Compensation Board, 356 Pa. 43, 48, 50 A. 2d 336, 340, the court said: "* * * 'good cause' must be so interpreted that the fundamental purpose of the legislation shall not be destroyed." As said in Bigger v. Unemployment Comp. Comm., 43 Del. 553, 565, 53 A. 2d 761, 766, speaking of the Act, "Its purpose was to protect all workmen involuntarily unemployed." See, also, Saunders v. Maryland Unemployment Compensation Board, Md., 53 A. 2d 579, 581.

The Missouri Supreme Court in Haynes v. Unemployment Comp. Comm., 353 Mo. 540, 547, 183 S. W. 2d 77, 81, 82, said:

"The word 'unemployment,' was, we believe, used as meaning not employed because of lack of employment, *that is, unemployment resulting from the failure of industry to provide employment. * * ** In the case under consideration it is apparent from claimant's own testimony that she left her employment through no fault of her employer and for no cause connected with the employment; and that she clearly recognized that employment in some suitable capacity with her former employer had at all times been open to her, if she had been in a suitable physical condition to accept it." (Italics supplied.)

The quotation is apropos, and applies with near perfection to the case before us.

In Department of Labor and Industry v. Unemployment Compensation Board, 148 Pa. Super. 246, 248, 24 A. 2d 667, 668, is this language:

"And the basic principle at the root of the Act, justifying the exercise of the police powers of the Commonwealth in its enactment, *is that the reserves thus set aside* from the enforced contributions of employers are to be used for the benefit of persons *unemployed through no fault of their own.* Subsequent provisions as to eligibility * * * or ineligibility * * * for compensation must all be read and construed as subject to this basic and fundamental declaration. If it is clear that a person's unemployment is the result of *his own fault,* he is not eligible for compensation under the Act, irrespective of his willingness to apply for, or accept suitable employment when offered to him, or that his leaving work was not wholly voluntary." (Italics supplied.)

Construing the Missouri Unemployment Compensation Law, the supreme court of that state in Wiley v. Carroll, Mo., 201 S. W. 2d 320, 322, said:

"* * * it is certain that it was not intended that its benefits should be extended to *one who not only voluntarily and because of personal affairs quit her employment but in addition moved* into a community in which there was no reasonable prospect of employment in her customary occupation." (Italics supplied.)

We have cited and quoted decisions of the Pennsylvania courts holding that although the words "attributable to his employer" are not in the unemployment **compensation statute** of that state, nevertheless the "good cause" for quitting must ordinarily be connected with the employment. Under the Iowa statute (section 96.5(1), Code of 1946) which contains those words, this court has no choice. There is no room for theoretical construction. Where the language is plain and unambiguous it must be accepted as expressing the legislative intent.

1172

III. Every part of a statute, if it can fairly and reasonably be done, must be given effect. If we accept the claimant's contention we must read the four above-quoted words out of the statute. We can neither add words to the statute nor eliminate them. Iowa Public Service Co. v. Rhode, supra, 230 Iowa 751, 754, 298 N. W. 794; Eysink v. Board of Supvrs., 229 Iowa 1240, 296 N. W. 376, and cases cited. This is the general rule.

"The court is not at liberty to read into the statute provisions which the legislature did not see fit to incorporate, nor may it enlarge the scope of its provisions by an unwarranted interpretation of the language used." Ford Motor Co. v. Unemployment Comp. Comm., 316 Mich. 468, 473, 25 N. W. 2d 586, 587, 588.

See, also, Bigger v. Unemployment Comp. Comm., 43 Del. Super. 274, 46 A. 2d 137, 144.

IV. While the statute under consideration is to be liberally construed in order to effect its beneficent purpose, yet construction should not be carried beyond the limits of its plain legislative intent. California Emp. Comm. v. Kovacevich, 27 Cal. 2d 546, 165 P. 2d 917; Hunter v. Miller, 148 Neb. 402, 27 N. W. 2d 638; Baker v. Powhatan Mining Co., 146 Ohio St. 600, 67 N. E. 2d 714, 719.

V. The burden of proof rested upon the claimant to establish her right to benefits under the Iowa Employment Security Law. Kontner v. Unemployment Compensation Board, 148 Ohio St. 614, 76 N. E. 2d 611; Reese v. Hake, 184 Tenn. 423, 427, 199 S. W. 2d 569, 570; Clinton v. Hake, 185 Tenn. 476, 480, 206 S. W. 2d 889, 890. She failed to meet this burden.

VI. Claimant contends that the Commission and the trial court gave too narrow a construction to the words (italicized below) at the close of section 96.2 of the Law, to wit:

"The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state require the enactment of this measure * * * for the compulsory setting aside of unemployment reserves to be used for the benefit of persons *unemployed through no fault of their own.*" (Italics supplied.)

It is the claimant who construes them too narrowly. She limits the meaning of "fault" to something that is blameworthy, culpable or wrongful. The word "fault" in its present content has been construed by a number of courts. In Walter Bledsoe Coal Co. v. Review Board of Employment Sec. Div., 221 Ind. 16, 20, 46 N. E. 2d 477, 479, the court said:

"Appellees say that the word 'fault' means 'something worthy of censure.' We cannot believe that the word as used in the statute was intended to have such a meaning. * * * Thus 'fault' must be construed as meaning failure or volition."

To the same effect see Tucker v. American Smelting & Refining Co., Md., 55 A. 2d 692, 695; Board of Review v. Mid-Continent Petroleum Corp., 193 Okla. 36, 141 P. 2d 69; Auker v. Review Board, 117 Ind. App. 486, 493, 71 N. E. 2d 629, 632.

The decision of the Commission and the judgment of the district court are amply sustained by the law and the evidence and will not be disturbed. Wolfe v. Iowa Unemp. Comp. Comm., 232 Iowa 1254, 7 N. W. 2d 799.

The judgment and decree is affirmed.—Affirmed.

All JUSTICES concur.