Joseph B. WALLES, Appellee,

v.

IOWA EMPLOYMENT SECURITY COM-
MISSION and Bechtel Corporation,
Appellants.

No. 56257.

Supreme Court of Iowa.

June 26, 1974.

Walter F. Maley and Blair Dewey, Des
Moines, and Patrick M. Roby, Shuttle-
worth & Ingersoll, Cedar Rapids, for ap-
pellants.

James W. Crawford and Gerald T. Sulli-
van, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and
RAWLINGS, LeGRAND, UHLENHOPP
and HARRIS, JJ.

UHLENHOPP, Justice.

The determinative question in this unem-
ployment compensation appeal is whether a
fact issue exists as to the cause of the
claimant's separation from his employment.

One of the bases for disqualification for
unemployment compensation is voluntary
quitting without good cause attributable to
the employer—"If he has left his work vol-
untarily without good cause attributable to

his employer, if so found by the [Iowa Employment Security] commission." Code 1973, § 96.5(1). This court has stated:

> Involuntary quitting or remaining away from one's employment for good cause alone is not determinative of the question of whether one is disqualified for benefits under chapter 96 of the Iowa Code 1954, I.C.A. On several previous occasions we have discussed this language found in Code section 96.5 and decided that an involuntary quitting or voluntary leaving of one's employment for good cause may or may not disqualify a claimant for benefits, depending upon whether it is shown by substantial evidence that the cause was directly connected with the employment or acts of the employer. Deere Mfg. Co. v. Iowa Employment Security Comm'n, 249 Iowa 1066, 1071–1072, 90 N.W.2d 750, 754.

In the Deere case a union had struck the plant and set up picket lines, and the claimant was afraid to cross them. This court denied unemployment compensation. The cause was attributable to the union.

■■■ The burden is on the claimant in these cases to show his entitlement to unemployment compensation. Moulton v. Iowa Employment Security Comm'n, 239 Iowa 1161, 34 N.W.2d 211. We accord the fact-findings of the Employment Security Commission the deference we give to jury verdicts. When the facts are in dispute or when reasonable minds may differ on the inferences to be drawn from the evidence, the commission's findings are conclusive. If the evidence presents a jury question, were trial by jury, the courts are bound by the commission's findings. Wolfe v. Iowa Unemployment Compensation Comm'n, 232 Iowa 1254, 7 N.W.2d 799.

Claimant in this case, Joseph B. Walles, ceased to work for Bechtel Corporation. No question can exist about that. The main question relates to the cause of his departure. Did he cease work because Bechtel discharged him or because union personnel told him he could not work?

Claimant is a journeyman electrician. He lived in Houston, Texas, where he belonged to Local 716, International Brotherhood of Electrical Workers. He was unable to obtain work there and came to Iowa, bringing a letter from Local 716 stating that he was a union member in good standing and asking that he be given consideration. He went to Local 405 in Iowa which sent him to the Bechtel project at Palo, Iowa. He reported to the union steward at the Palo project and went to work on September 27, 1971. The evidence does not show whether a collective bargaining contract exists on that project or if so, its terms. Apparently the project has union personnel. Whether it also has non-union personnel, or whether any requirement of union membership exists, does not appear.

While claimant was working at Palo, Local 716 in Texas notified him that his dues were in arrears. He took two weeks off in February 1972 and went to Texas to try to straighten out the matter.

In early April 1972, the union steward at Palo told claimant to call the union business agent. Claimant went to the business agent, who told him he had to get his union problem straightened out in Texas before he could go back to work. Claimant thereupon ceased working for Bechtel. This was on April 3, 1972.

Commission rule 1.5(2) requires an employer to file with the commission and send to the employee a Notice of Separation when an employee leaves under circumstances which may disqualify him for unemployment compensation, in the employer's opinion. 1973 I.D.R. 253. Bechtel so filed and sent such a notice on April 6, 1972, marking the form that claimant left without good cause attributable to his employer. When claimant got his copy, he objected to the union steward who, according to claimant, "went up there and this guy up here corrected it somewhere." Who "this guy up here" is or what the correction was does not appear. Nor does evidence

appear that anyone from Bechtel discharged claimant. We will return later to the evidence on the cause of claimant's departure from his employment.

On April 16, 1972, claimant filed a claim for unemployment compensation, and on April 27, 1972, a commission interviewer conferred with claimant. At that time claimant stated, "Since I do not have my paid up union card they will not permit me to work." The interviewer marked the interview form, "On 3–31–72 he left emp. V. 2.", and also, "The claimant was separated from his employment because he did not have a union card; snae."

On May 1, 1972, a commission claims deputy ruled that claimant was disqualified because he voluntarily quit and stated the facts to be, "The claimant was separated from his employment because he did not have a union card; separation not attributable to the employer."

The commission sent claimant and Bechtel copies of that ruling. Claimant took an appeal to a hearing officer. Bechtel wrote the commission a letter. In the letter Bechtel stated it had received the claims deputy's ruling "which states 'The claimant was separated from his employment because he did not have a union card; separation not attributable to the employer'. However, the claimant was not separated but 'quit voluntarily'." Bechtel also stated in the letter that it could add nothing more and that it waived appearance at the appeal hearing. Bechtel filed nothing more with the commission.

A hearing officer held a hearing. Claimant appeared and testified about his trip to Texas to straighten out his dues problem. He then testified:

I came back and I went to work in February. I told the steward, you know, and let him know what was wrong. Then in April he said no, call the business agent over here. So I called the business agent of 405 and he said I had better come into the office. I [he?] said I had to get this straightened out before I could go back to work. Actually the way they state it and then when I did come back they gave me this determination notice—that's what I call it—and they said I left voluntarily, which I didn't. I was asked to leave or I couldn't work.

Q. [by hearing officer]: This is our notice of separation.

Further:

Q. They [Bechtel] got it [notice of separation] marked "voluntarily left without good cause attributable to his employer." Was he a business agent that told you you couldn't go—they couldn't put you back on the job?

Clamaint: 405 out here sir.

Q. Until you got all this straightened out?

Claimant: That is right.

Q. Actually, the problem was that your home local—let me ask you first, when you went down to Houston, did you have money to—

Claimant: Yes sir, I sure wanted to pay them up.

Q. They told you—

Claimant: To fill out the papers and you are reinstated or something. Well, no reinstatement as far as I know.

Also:

Q. And you actually worked up to April?

Claimant: April, that is right.

Q. That was when the business agent here called you—

Claimant: Not the business agent. The steward. I had a talk with the steward and he said, "Joe, call Marv" which I did. The steward is always on the job you know with the men.

Q. Oh, yes. You went in to see the business agent?

Claimant: That is right.

Q. And he says "We can't put you back on the job until we get this matter straightened out?"

Claimant: That is correct.

Q. Have you ever gotten it straightened out?

Claimant: I went down there sir but I couldn't get ahold of my business agent. Like I said, when I filed those papers I wanted to get ahold of my business agent. I called him and he told me, "Joe, I am going to look into this." He was looking into it.

In addition:

Q. We don't—it appears we don't have an initial statement from the employer.

Claimant: This is the initial statement from the employer sir, right here. That is the way it is going to be, because I don't think they were explained about it. I don't think the employer was explained.

Q. The only thing we have from them is this letter?

Claimant: Right.

The hearing officer held that the union business agent told claimant he could not go back to work until he cleared up his dues problem and that claimant's separation did not result from any act of the employer. Since claimant's leaving was not attributable to Bechtel, the hearing officer denied the claim. Claimant thereupon appealed to the commissioners.

By split decision, the commissioners affirmed. The dissenting commissioner believed that under the Iowa right-to-work statute, an employer cannot require as a condition to employment that an employee be in good standing with a union. See Code 1973, ch. 736A. He did not deal with the question of whether the evidence showed Bechtel did, in fact, so require.

Claimant appealed to district court, which reversed the commission's decision and allowed the claim. The commission and Bechtel then appealed to this court.

The appeal presents two main questions: (1) Could the commission reasonably find on the evidence that the union caused claimant to leave his employment? (2) If so, did claimant leave his employment with good cause attributable to Bechtel?

I. *The Cause of Separation.* Since we do not find the facts anew, we review the evidence to see if it presents a fact question on whether the union caused claimant's separation from his employment. Claimant did leave his job. Had the evidence showed that Bechtel required as a condition of employment that employees be union members in good standing and had claimant lost his employment because he lost his good standing with the union, we might have a different case in view of our right-to-work law, Code 1973, ch. 736A. Cf. Amuchastegui v. Oregon Dep't of Employment, 4 Or.App. 456, 479 P.2d 526. That problem we do not decide, for the record is barren of proof that Bechtel imposed any requirement of union membership or had an arrangement to employ only union members. The real problem in this case is simply this: who caused claimant to leave his employment?

The commission could reasonably find on the evidence that the union business manager, not Bechtel, told claimant he could not return to work until he straightened out his union problem. No evidence was adduced that the business manager did so on behalf of Bechtel or had any authority from Bechtel to do so. Indeed, claimant candidly testified concerning Bechtel, "I don't think they were explained about it. I don't think the employer was explained."

Only after the business manager had told claimant he could not work and claimant

had left the job did Bechtel file the notice that claimant had separated from his employment. The commission was well within its fact-finding province in holding that the union, and not Bechtel, caused the separation. Consequently, that finding must stand. Wolfe v. Iowa Unemployment Compensation Comm'n, 232 Iowa 1254, 7 N.W.2d 799.

II. *Good Cause Attributable to Employer?* Under such facts, the second question in the case answers itself. Since Bechtel did not cause the separation, claimant's departure simply cannot be said to be attributable to Bechtel. So far as appears, claimant would still be working for Bechtel but for the acts of the steward and the business agent. The commission therefore correctly concluded that claimant was disqualified by § 96.5(1) of the Code. Deere Mfg. Co. v. Iowa Employment Security Comm'n, 249 Iowa 1066, 90 N.W.2d 750.

Claimant asserts in his brief that the commission and Bechtel did not take this appeal in time. Notice of appeal was filed on March 16, 1973. The final judgment was actually rendered on February 20, 1973. Wolf v. Murrane, 199 N.W.2d 90 (Iowa); Scott v. Manley, 240 Iowa 722, 36 N.W.2d 474. The notice was therefore timely. Rule 335, Rules of Civil Procedure.

Reversed.

MOORE, C. J., RAWLINGS and LeGRAND, JJ., concur.

HARRIS, J., dissents.

HARRIS, Justice (dissenting).

Under § 96.6(10)(d), The Code, the district court may modify or reverse the commissioner's decision if there is not sufficient competent evidence in the record to support it. I believe the record here was not sufficient. It consisted only of a self-serving letter from the employer and various incomprehensible statements of the claimant. At hearing claimant was obviously oblivious of any rights he had under the right-to-work law. Chapter 736A, The Code. It seems to me unfair and contrary to the spirit of both the employment security chapter and the right-to-work law to deny the claimant an opportunity to attempt to show the employer participated in claimant's dismissal. The employer's self-serving letter may well be only an erroneous legal conclusion. I would remand the case for a further proceeding at which either party could offer evidence on the question of the employer's participation in claimant's dismissal.