HOWARD R. McCARTHY, appellee, v. IOWA EMPLOYMENT SECURITY COMMISSION et al., appellants.

No. 48923.

(Reported in 76 N.W.2d 201)

Aᴘʀɪʟ 4, 1956.

Don G. Allen and N. C. Quiett, both of Des Moines, for appellants.

M. H. Morrissey, of Clarion, for appellee.

Sᴍɪᴛʜ, J.—Section 96.5(1), Iowa Code, 1954, provides: "An individual shall be disqualified for [unemployment] benefits: If he has left his work voluntarily without good cause attributable to his employer, if so found by the commission." It is in the chapter titled "Employment Security."

I. The language in some aspects is so clear we have heretofore referred to it as "plain and unambiguous." Iowa

Public Service Co. v. Rhode (1941) 230 Iowa 751, 298 N.W. 794. And we have said it must be accepted as expressing the legislative intent. Moulton v. Iowa Employment Security Comm., 239 Iowa 1161, 34 N.W.2d 211.

But "plain and unambiguous" language must sometimes be applied in unusual circumstances, clearly not contemplated nor clearly covered when it was formulated. Whether the process be called "interpretation" of the language, or merely "application" of it to unforeseen facts, we must, if reasonably possible, avoid a result clearly contrary to the avowed purpose of the entire chapter. We said in Wolfe v. Iowa Unemployment Comp. Comm., 232 Iowa 1254, 1257, 7 N.W.2d 799, 801: "Each case of this character must turn upon its own facts." And we have also recognized we must consider the entire Act. Iowa Public Service Co. v. Rhode, supra. "Doubtless the language must be construed in the light both of its context and its purpose." Stromberg Hatchery v. Iowa Employment Security Comm., 239 Iowa 1047, 1054, 33 N.W.2d 498, 503.

The facts here are not in dispute. Plaintiff was an employee of the Farmers Produce Company in 1953, was laid off when the plant was temporarily closed and was later re-employed and worked full time from July 8 to December 28, 1954, when the plant was again closed, and he applied for unemployment compensation.

During a part of this latter period he worked evenings (commencing in August) for Hi Hat Bowling Alley (two or three nights a week) for seven or eight weeks, as a pin setter. He quit this extra, part-time job in October 1954 because he found the combined jobs too heavy.

Both employers were covered under the "Employment Security" chapter. No question is raised as to plaintiff being a full-time employee of the Produce Company from July 8 to December 28, 1954, and only a part-time employee of the Bowling Alley for the limited period. It is not denied he quit the night job voluntarily without good cause attributable to either employer. But he claims no compensation credit on account of his Hi Hat employment.

The Commission held his voluntary quitting of the evening

job disqualified him for *all* benefits accrued under both employments up to that time. The trial court reversed that decision and this appeal results.

II. Code chapter 96 designed to be known and cited as the "Iowa Employment Security Law" (see section 96.1) sets out a complex and elaborate legislative program "for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." Section 96.2, Iowa Code, 1954. It requires employers to contribute according to certain percentages of wages (not necessary to be described here), said contributions not to be "deducted in whole or in part from the wages paid to" employees. Code section 96.7, subsections 1 and 2.

Code section 96.7 also provides subsection 3*a*(1) for the Commission to keep *separate* account for each employer and for the determination of the amount of benefits charged against his account to be based on its benefit experience. We find no reason to hold that plaintiff's part-time evening employment with Hi Hat Bowling, or its discontinuance, had anything to do with or effect upon the amounts that would be payable to plaintiff by reason of his being an employee of Farmers Produce Company. His full-time employer is not a party here.

Defendant Commission argues: "Between the time that the plaintiff-appellee left his employment with the Hi Hat Bowling Alley (in October) and the cessation of his work for the Farmers Produce Company (December 28) he had not earned * * * sufficient credits to be paid unemployment benefits as of the time of his application therefor. His wage credits for this period, based upon his work for the Farmers Produce Company, still stand to his credit." This pronouncement was presumably under Code section 96.4(5). If allowed it would wipe out all credits he had on both employments to the date of quitting his evening job and require him to commence all over with the Produce Company. It presents the one question on appeal.

We think the termination of plaintiff's work with the Bowling Alley should have no effect upon the record of his full-time employer.

III. No Iowa decision is cited which considers Code section 96.5(1) in its relation to the problem here. The meaning

of the words "voluntarily without good cause" has been discussed in their relation to various situations. See e. g. Wolf's v. Iowa Employment Sec. Comm., 244 Iowa 999, 59 N.W.2d 216; Moulton v. Iowa Employment Sec. Comm., 239 Iowa 1161, 34 N.W.2d 211.

But we have here a different controversy. It concerns the meaning (or application) of the words "his work" in the clause "if he has left his work * * *", where the claimant has (as here) simultaneously had two jobs and two employers. If in such case he quits a comparatively minor evening part-time job but retains his regular full-time employment, has he "left his work" within the legislative intent?

This subsection does not specify "*all* his work"; but neither does it say "*any* of his work" or "*part* of his work." It seems not to recognize that there might be more than one "work" and two or more concurrent employers. Some construction or interpretation thus becomes necessary of a statute otherwise "plain and unambiguous."

Meeting that challenge we think the intent and purpose of the whole legislation must be consulted. When that is done the answer seems clear. The words "If he has left his work * * *" must be construed to mean "If he has become unemployed * * *." Only that interpretation accords with Code section 96.2 which states the very purpose of the legislation to be to require the compulsory setting aside of reserves "for the benefit of persons *unemployed* through no fault of their own."

No one contends plaintiff here was *unemployed* merely by discontinuing what the trial court appropriately calls his "side-line." As plaintiff in effect argues, "44½ hours of labor a week between breakfast and supper" is not "unemployment."

We realize that when we get into the field of dual or possibly multiple concurrent jobs with two or more employers, vexing questions may arise as to what constitutes employment or unemployment under this law. Code section 96.19(7) defines "employment." But at what point "unemployment" arises may sometimes be difficult of determination. That problem, when and if it arises, will present first a question of fact for the commission to determine under the record then presented. Its decision on the facts will be conclusive on appeal if supported by substantial evidence. Wolfe v. Iowa Unemployment Comp. Comm., 232 Iowa

1254, 1257, 7 N.W.2d 799; Code section 96.6, subsection 10(4).

No such problem is presented here. The defendant Commission's decision was not based on the proposition that plaintiff became unemployed by quitting the evening job; nor under the record could it be held he did so become. It cannot logically be said he thereby "left his work." We must limit our decision to the facts of the instant case. As the trial court wisely observes "This is not to say the same result would or would not follow in other multiple job situations."

IV. Defendant Commission argues that under its rules, adopted pursuant to Code section 96.7(3a4) each account would be charged a portion of any benefits plaintiff might receive here. But we are governed by the statute. The necessity of reinterpretation to meet the problem of dual or multiple concurrent employment and employers doubtless may require some change or elaboration of rules to meet more complex conditions. We have confidence in the ability of the Commission to meet the difficulty as it has successfully met others before.

V. In closing it seems advisable to consider the result to the employers, not controlling but proper to take into account. We cannot do better than again adopt the language of the trial court:

"The employer is not hurt by the view just expressed. The Produce Company received the benefit of plaintiff's services as a regular employer. It closed down and brought about his condition. * * * To give the Produce Company a better experience rating because plaintiff quit a part-time job at the bowling alley would be to hand the company a windfall.

"How about the bowling alley? It did not cause the unemployment. Its rating should not be detrimentally affected. Neither should plaintiff be able to claim anything by virtue of his work there. The Commission would be justified in deleting the bowling alley throughout in processing the claim. The pertinent figures are available in the Commission's record to do this."

It seems inescapable that the trial court has reached a correct conclusion. It is accordingly affirmed.—Affirmed.

All JUSTICES concur.