CHARLEY A. SPENCE, appellant, v. IOWA EMPLOYMENT SECURITY COMMISSION et al., appellees.

No. 49214.

(Reported in 86 N.W.2d 154)

NOVEMBER 12, 1957.

Arthur K. Anderson, of Des Moines, for appellant.

Don G. Allen, of Des Moines, for appellees.

SMITH, J.—Claimant had been employed periodically by defendant Wahkonsa Foundry as a laborer. The last period of employment began September 15, 1954. His duties consisted primarily of cleaning mill pipes from one p.m. to ten p.m. He claims that on November 3, 1954, during his working hours and while actually engaged in performing his assigned task, he suffered a back injury; that "no supervisory personnel was present", and that he left about 10:30 p.m. for home telling his fellow workers to report his injury.

He filed his claim for unemployment compensation December 3, 1954. On December 11 the employer charged him with a voluntary "quit" on November 3, and on December 27 the claims deputy disqualified him for benefits. He appealed and on January 25 the referee heard the appeal, claimant appearing in person.

The sequence of events is difficult to determine as set out in the record, but it will perhaps suffice to say the appeal tribunal, the referee and finally the commission (unanimously) affirmed the conclusion reached by the claims deputy at the beginning: "That the claimant had left his employment * * * on November 3, 1954, voluntarily without good cause attributable to his employer." Code section 96.5(1).

Claimant's statement filed "on or about" December 3, 1954, states: "I injured my back on the job on 11-3-54. This happened when I pulled on a large 6″ pipe and it was too heavy. This happened about 10 p.m. I had to quit work. I did not go to the doctor until 6 Nov. 1954. However I was not able to go to work on 11-4-54. I called the Co. by telephone and reported that I couldn't work. I did not report after that.

"I did not report the injury when it happened to the foreman since the foreman wasn't there at the time but I asked two of the other men to report it to the foreman when he did get back. I don't know for sure that they did but I believe they did.

"The doctor released me to go to work on 11-27-54. On Mon. 11-29-54 I did not go to work because I did not have bus fare. I did go out on Wed. 12-1-54 but Fred Dennis, Personnel Mgr., told me they were all filled up. I am now able to work and available for work."

This statement was signed by claimant December 3, 1954. Above the signature is the notation "I have read the foregoing statement and agree with its contents." It is witnessed by "Bertram Adams, Claims Deputy."

Notice was thereafter, on December 8, given of the filing of the claim and of an "initial determination by the Commission." The employer (on December 11) filed protest that claimant had "voluntarily quit without good cause attributable to the employer," followed on the 18th by an "Employer's Statement" which added the information claimant was hired September 15.

An examination of claimant's testimony at the hearing before the referee (or perhaps the appeals tribunal, the record is unclear) adds little to what was shown by his written statement. He says he called the company several times by telephone "and told them I was still down with my back" and he says each time he was answered: "O.K. Mr. Spence." He never requested or

received a leave of absence. When asked for his doctor's statement he replied, "I left it up to the Red Cross." Apparently no effort was ever made at any stage to get the doctor's testimony or statement, or to call the workmen Fred Robinson and Ralph Bruce, who were with claimant at the time of the alleged injury and whom he asked to notify the employer of it.

As already suggested the record gives no very orderly picture of the various stages traveled by the proceedings before they reached the district court. The petition on that appeal had attached to it "Exhibit A" which valiantly—but tardily—attempted to inject several matters not already shown and which, of course, could not be in the transcript the commission was by statute (Code section 96.6, paragraph 9) required to file in court within sixty days.

Exhibit A stated: the claimant had only third grade education and could neither read nor write; that he had signed a statement prepared by the deputy, the contents of which were to him unknown; and that he was ignorant of his rights in various respects, viz., to offer evidence, to file brief or orally argue.

These matters, so far as pertinent, should have been called to the attention of defendant commission so the district court could consider them in reviewing the commission's decision under Code section 96.6, paragraphs 9 to 11. We of course cannot consider them here.

I. The right of court review is limited by Code section 96.6, paragraph 10 (all Code citations herein are to Iowa Code, 1954):

"Any order or decision of the commission may be modified, reversed, or set aside on one or more of the following grounds and on no other:

"1. If the commission acted without or in excess of its powers.

"2. If the order or decree was procured by fraud.

"3. If the facts found by the commission do not support the order or decree.

"4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

The decision here is expressly based on Code section 96.5, paragraph 1, which provides:

"An individual shall be disqualified for benefits:

"1. *Voluntary quitting.* If he has left his work voluntarily without good cause attributable to his employer, if so found by the commission." (The exceptions *a, b* and *c* are not material here, except possibly as aiding a contention that the word "work" in the principal section quoted above must be construed as meaning the "employment" status. We shall discuss that question later.)

The "Notice of Disqualification" which inaugurated the series of decisions which culminated in the commission's and the district court's final approval, and all decisions intervening, are based on Code section 96.5, paragraph 1.

II. Claimant contends he did not *leave* his work in the sense meant by the statute when it says "left his work voluntarily"—that "the leaving of work that disqualifies a claimant * * * is a leaving or a termination of the employment relationship or contract."

He cites Code section 96.2 which is merely a general "Guide for interpretation" of the whole chapter stating its policy in "the achievement of social security." We have held in effect however that it is not inconsistent with the provision in 96.5, disqualifying for benefits an employee voluntarily leaving his work "without good cause attributable to his employer." Iowa Public Service Co. v. Rhode, 230 Iowa 751, 298 N.W. 794. And in Wolf's v. Iowa Employment Security Comm., 244 Iowa 999, 59 N.W.2d 216, we said this section does not entitle an employee quitting work for cause of sinus infection to unemployment benefits.

Claimant here cites McCarthy v. Iowa Employment Security Comm., 247 Iowa 760, 76 N.W.2d 201. In that case claimant had held a full-time job and concurrently a part-time evening job with a different employer. We held he had not left his "work" voluntarily (as used in Code section 96.5, paragraph 1) by quitting his evening employment, when a case arose later involving his day job. That case did not involve (as does this one) the difference between quitting permanently and taking a mere temporary "lay-off."

Claimant here was in a state of unemployment a full month without leave and without any request for leave. He claims he was under a doctor's care and was not released until Saturday, November 27. However he did not report for duty until the following Wednesday, nor did he produce any doctor's certificate to account for his month's absence.

Interpretation of the statute does not depend on claimant's intention nor is the fact-finding body (defendant commission) bound thereby. We cannot reverse its finding any more than can the district court. Code section 96.6, paragraphs 9, 10.

■ III. The burden of proof rests upon a claimant to establish his right to benefits under the Iowa Employment Security Law. Moulton v. Iowa Employment Security Comm., 239 Iowa 1161, 1172, 34 N.W.2d 211, citing Kontner v. Unemployment Compensation Board, 148 Ohio St. 614, 76 N.E.2d 611, Reese v. Hake, 184 Tenn. 423, 427, 199 S.W.2d 569, 570, and Clinton v. Hake, 185 Tenn. 476, 480, 206 S.W.2d 889, 890.

■ And where the facts are in dispute, or where reasonable minds may differ on the inferences to be drawn from the proven facts and circumstances, the findings of the commission are conclusive. Wolfe v. Iowa Unemployment Compensation Comm., 232 Iowa 1254, 7 N.W.2d 799; Johnson v. Iowa Employment Security Comm., 239 Iowa 816, 828, 32 N.W.2d 786.

■ We agree with the decision that "there is ample competent evidence * * * to warrant the defendant commission in * * * denying the plaintiff's claim for benefits under the Iowa Employment Security Law."—Affirmed.

All JUSTICES concur.