SUE A. McCOMBER, appellee, v. IOWA EMPLOYMENT SECURITY COMMISSION, et al., appellants.

No. 50856.

(Reported in 119 N.W.2d 792)

FEBRUARY 12, 1963.

Don G. Allen, of Des Moines, and Doerr, Dower & Rehling, of Davenport, for appellants.

H. T. Lewis, of Davenport, for appellee.

THOMPSON, J.—■ This appeal is unusual in that all parties rely upon and cite authorities supporting the same governing rule. It is the thoroughly established principle that the fact findings by the Employment Security Commission are binding upon the courts on appeal when supported by substantial evidence. Code of Iowa, section 96.6, paragraph 10; Spence v. Iowa Employment Security Commission, 249 Iowa 154, 157, 158, 86 N.W.2d 154, 156; Johnson v. Iowa Employment Security Commission, 239 Iowa 816, 828, 32 N.W.2d 786, 792; Wolfe v. Iowa Unemployment Compensation Commission, 232 Iowa 1254, 1257, 7 N.W.2d 799, 800, 801.

It is evident that the parties differ as to what facts were actually found. The defendants, Iowa Employment Security Commission and Davenshire, Inc., make common cause in attempting to uphold the decision by the administrative body, which was adverse to the plaintiff and favorable to the employer. The Iowa Employment Security Commission will hereinafter be known as the Commission, and the same term will refer to both defendants, who file a joint brief and argument. The trial court held that under the record here it was not bound by the decision of the Commission, and entered its decree and judgment that plaintiff is entitled to employment security benefits under chapter 96 of the Code. From this the defendants appeal.

The controversy, as indicated above, concerns the claimed right of the plaintiff to benefits based on wages earned by her as an employee of defendant Davenshire, Inc., from April 1, 1960, through September 5, 1961. There is no denial that she

was such employee, and that she quit her employment on or about the latter date. She contends, however, that her quitting was for good cause attributable to her employer. Section 96.5 (1d), Code of 1962. It is her claim that she was required to work with woolen garments, the manufacture of which was apparently the employer's chief or perhaps only business; and that she had or developed an allergy to wool which caused her to suffer a dermatitis on her arms. She consulted with Dr. Lester Kimberly, a skin specialist, who was unable to say what caused the breaking out. She then consulted Dr. Joseph J. Kehoe, a doctor of Chiropractic, who according to her testimony told her the condition was caused by nervousness and the contact with the wool, and "he figured it was something in the dye of the wool that was causing it, the friction from the wool and being nervous caused it too." She also said Doctor Kehoe told her her nervous condition should not bother her if she did not work with woolens in such manner as to cause friction on her arms. In May of 1961 she was granted a leave of absence; she returned to work on July 10 next, but her arms again suffered the dermatitis, and she was compelled to quit, and was given an indefinite leave of absence. She again returned to work on August 28, but in a few days the breaking out reappeared. She asked the supervisor if she could be transferred to the cutting room, where her arms would not come in contact with the wool; but was told they could not be transferring her all over the shop. She then left her employment.

I. It is evident the crucial point in the case is primarily whether the plaintiff quit her employment for good cause attributable to her employer. But it is also evident that if the fact findings of the Commission were adverse to her on this point, the courts are powerless to interfere. We are not concerned whether there was evidence in the hearing before the appeal tribunal which might have supported its conclusion; it is the findings and decision of that tribunal actually made with which we must deal. The Commission, on appeal to it from the appeal tribunal, merely said:

"The Commission, having reviewed the record in its entirety and being fully advised in the premises, finds and holds

that the record in this case supports the findings of fact and decision of the referee, and the decision must be affirmed." The fact findings and decision of the appeal tribunal therefore became the findings and decision of the *Commission.

II. We therefore turn to the findings of fact and decision of the appeal tribunal. Here the reason all parties rely upon the rule that the fact findings of the Commission are binding upon the courts becomes evident. Section 96.6, paragraph 10, supra, says: "Any order or decision of the commission may be modified, reversed, or set aside on one or more of the following grounds and on no other: * * * 3. If the facts found by the commission do not support the order or decree."

These substantial facts were found by the appeal tribunal and adopted by the Commission:

"She suffered from extreme nervousness which apparently aggravated a sensitivity to woolen materials resulting in a skin allergy. The employer changed her work assignment in an effort to relieve the condition, and the claimant was granted a leave of absence, but the condition returned, and on the advice of her doctor, Dr. Joseph J. Kehoe, she left to seek another type of work. She testified that there was nothing inherent in the job itself that caused her nervousness, but the materials with which she worked aggravated her allergy."

After quoting section 96.5(1d) of the Code, to which later reference will be made, the fact findings and ruling of the appeal tribunal concluded:

"This is not a case in which a substance or material used by an employer is of such a nature as to be toxic or harmful to a considerable number of its workers. It is a case of the claimant being so constituted that her allergy condition reacts unfavorably to a very common material—wool. The employer is a garment manufacturer, and this material, of course, could not be eliminated from its operations in order to alleviate the condition of the claimant. The referee, therefore, holds that the claimant's separation was not for a good cause attributable to the employer, and she did not meet the requirements of paragraph (d) of the above section of the Iowa Law, and must, therefore, be disqualified for benefits."

Except for a statement that the employer testified the plaintiff was the first employee to develop an allergy as the result of working with the materials used by the employer, the foregoing contains the entire fact findings of the appeal tribunal and so of the Commission. The decision is contained under one heading, "Findings of Fact and Conclusions of Law" and the facts and law are not in terms separated. It is evident, however, that the only legal conclusions are found in the last sentence quoted above: "The referee, therefore, holds that the claimant's separation was not for a good cause attributable to the employer, and she did not meet the requirements of paragraph (d) of the above section of the Iowa Law, and must, therefore, be disqualified for benefits."

The question before us is, therefore, did the facts found by the appeal tribunal, and by the Commission in turn, support the conclusion reached and the order and decree? The final sentence of the decision, quoted last above, is clearly not a finding of fact, but the conclusion drawn from the facts found. The findings of fact are that the plaintiff's condition was caused, in part at least, by materials with which she worked. It is specifically found that "She suffered from extreme nervousness which apparently aggravated a sensitivity to woolen materials resulting in a skin allergy"; and "It is a case of the claimant being so constituted that her allergy condition reacts unfavorably to a very common material—wool."

It was further found that "The employer changed her work assignments in an effort to relieve the condition, and the claimant was granted a leave of absence but the condition returned; and on the advice of her doctor, Dr. Joseph J. Kehoe, she left to seek another type of work."

We agree with the trial court that the facts found do not permit the conclusion drawn from them by the Commission in its order and decree. Section 96.5(1d) provides that disqualification for benefits does not result if the claimant left his work because of illness or injury and upon the advice of a physician and upon knowledge of the necessity for such absence immediately notified the employer who consented to the absence. These things were done; but the difficulty here is that, according to the facts found

by the Commission, the work itself was responsible for the illness. Of course the quitting of the employment was in a sense voluntary on the part of the plaintiff; but we conclude that the facts found by the Commission show such quitting was for good cause attributable to the employer.

III. The facts found by the Commission here bring the case squarely within the rule laid down in Raffety v. Iowa Employment Security Commission, 247 Iowa 896, 76 N.W.2d 787. In that case an employee had been injured in the course of his employment, which rendered him unable to work for several weeks. When he returned he had been advised by his doctor that the regular work he had been doing before the injury would be too heavy for him, but he could do lighter work. He advised the employer of this, but no lighter work was offered and he sought other employment. We held these facts justified a holding that the employee was qualified for benefits under the Iowa Employment Security law, chapter 96, supra.

In so doing we cited with approval the case of Fannon v. Federal Cartridge Corp., 219 Minn. 306, 307, 312, 18 N.W.2d 249, 250, 252, 158 A. L. R. 389, 392, 394. The facts in the Fannon case were in practical effect identical with those in the case at bar. There a woman employee was allergic to gunpowder and was compelled to leave her employment for that cause. The Minnesota statute at this point is substantially the same as ours. The Minnesota Supreme Court held that, while the employee in a sense left her work of her own volition, her quitting was in fact involuntary, because continuance would endanger her life; and, further, the separation was for good cause attributable to the employer. We quoted with approval: " "* * * we feel the legislature intended that, where factors or circumstances directly connected with employment result in illness or disease to an employe and make it impossible for him to continue therein because of serious danger to his health, termination of employment for this reason may correctly be said to be involuntary and for "good cause attributable to the employer," even though the employer be free from all negligence or wrongdoing in connection therewith.' " Raffety v. Iowa Employment Security Commission, supra, loc. cit. 247 Iowa 899, 900, 76 N.W.2d 789.

Such is the situation under the facts found by the Commission here. The material with which the plaintiff must work, as the gunpowder in the Fannon case, caused or aggravated an allergy and a dermatitis. After a leave of absence, when she returned to work the condition recurred. On the advice of her doctor she was compelled to find other employment. The trial court properly found that upon the facts found by the Commission the plaintiff is entitled to benefits under the provisions of the Iowa Employment Security law.—Affirmed.

All JUSTICES concur.