**WILSON TRAILER COMPANY, Appellant,**

**v.**

**IOWA EMPLOYMENT SECURITY COMMISSION, Defendant-Commission,**

**and**

**Gerald D. Rose, Defendant-Claimant, Appellees.**

**No. 53504.**

Supreme Court of Iowa.

June 10, 1969.

772

Paul W. Deck Law Office, Sioux City, for appellant.

Walter F. Maley, Des Moines, for appellee Iowa Employment Security Commission.

Phillip D. Furlong, Sioux City, for appellee Gerald D. Rose.

LARSON, Justice.

The employer, Wilson Trailer Company, appellant herein, appealed from the decision of the district court affirming the award of unemployment benefits to appellee, Gerald D. Rose, by the Iowa Employment Security Commission under the provisions of chapter 96 of the Code of 1966. We affirm.

The principal issue before us on this appeal is whether there was sufficient competent evidence to sustain the commission's holding that appellee was not disqualified under section 96.5(1) (d). Section 96.5 provides in part:

"An individual shall be disqualified for benefits:

"1. Voluntary quitting. If he has left his work voluntarily without good cause

attributable to his employer, if so found by the commission. But he shall not be disqualified if the commission finds that: * * *

"d. He left his employment because of illness or injury upon the advice of a licensed and practicing physician, and upon knowledge of the necessity for such absence immediately notified his employer, or his employer consented to such absence, and after recovering from such illness or injury when recovery is certified by a licensed and practicing physician, he returned to his employer and offered his service and his regular work or comparable suitable work was not available, if so found by the commission, provided he is otherwise eligible."

Pursuant to an application on September 12, 1967, for unemployment benefits, the deputy commissioner issued a notice of disqualification for the reason that appellee left his work voluntarily without good cause. On October 6 appellee filed a notice of appeal and hearing was had thereon on November 1 before a referee, who affirmed the action of the deputy. Thereafter on November 10 appellee appealed to the commission and hearing was had on February 1, 1968. The commission reversed, holding that appellee was not disqualified under paragraph "d" of section 96.5(1), and allowed benefits "provided he is otherwise eligible." There is no claim made herein that appellee is not otherwise qualified.

It appears from the record that appellee commenced work for appellant on December 8, 1964, and remained so employed until August 25, 1967, when his employment was terminated by action of the employer for failure to report for work after leave for medical and surgical treatment. The nub of this controversy thus lies in the question of whether appellee complied with paragraph "d" of section 96.5(1) of the Code and returned to his regular work as soon as he was able. In other words, was his employment termi-

nated for good cause and without fault of the employer?

It is not disputed that on August 8 appellee obtained a leave of absence from appellant for the purpose of having 24 teeth extracted, that on August 9, in the presence of his physician Dr. Reynolds, Dr. Konegni performed the surgery at St. Vincent's Hospital in Sioux City, Iowa, that he was released from the hospital on August 10. The "Medical Report" of Dr. Konegni stated "that the Claimant had been released as being able to work as of September 12, 1967, at the same job he was doing." Claimant's evidence before the referee so shows.

Although this leave of absence, granted pursuant to a preliminary investigation by company officials on the probable time necessary for recovery, was only for three working days, we note on two prior occasions when this surgery was contemplated, substantially longer periods for the surgery and post-operative recovery were considered and granted, one as long as a month.

Claimant testified that prior to these extractions Dr. Reynolds had given him a physical examination and recommended that he wait a couple of weeks after surgery before returning to work. He also testified Dr. Konegni told him on August 10 that he was going to be weak, would not be able to work for a while, and that he should go home and take it easy. He said the dentist did not set a date for him to return to work, but advised him to stay off his feet. He complied by staying in bed the week of August 14.

Claimant further testified that he notified the employer by telephone on August 14 that he was still weak and sick, was staying in the house and would not be able to work that week. On the following Monday, August 21, he again called and informed the company he was still sick and knew he could not perform his duties as a welder. This testimony was not denied. However, in cross-examination claimant admitted he had not sought any

medical aid during this time. He said he reported for work on the morning of August 28 because he felt much better at that time. Upon returning he was informed his time card had been pulled and was told to pick up his tools.

The record discloses that on September 12 claimant Rose filed for unemployment compensation and submitted therewith two statements relative to his ailment and absence. In substance, they recited the circumstances above related.

Appellant does not dispute this evidence, but contends it is insufficient to prove that claimant's absence was justified. The company's industrial relations director, Mr. Moritz, said he was advised by Dr. Konegni's wife and office manager that three days was a normal recovery time for such extractions and, if there was a problem, a day or two more would be required. On August 25, Moritz testified, he called the dentist's office and was told claimant was to have reported for a checkup on August 15 but had not done so. Mr. Moritz testified that, while he was on vacation beginning August 9, at his request the company's personnel director called the dentist himself and was told by him that the claimant could return to work as he had been released the prior Thursday, August 10. After learning claimant had not consulted the dentist after release from the hospital, Mr. Moritz said he ordered the suspension on August 25 and "advised the supervisor to pull his time card and terminate his employment." This was done.

At the hearing before the referee, claimant submitted two statements from attending doctors verifying his hospitalization, including one from his personal physician Dr. Reynolds in which he asserted that at the time of the surgery he recommended "that Mr. Rose not return to work until August 28, 1967." Although no serious objection to the admission of this testimony is advanced by the appellant, it does contend such evidence is incompetent as self-serving, contradictory, was not sufficient

to justify a finding that claimant was not disqualified for unemployment benefits, and was improperly considered by the commission in its decision.

In its findings of fact and conclusions of law the commission noted that claimant had been cleared as physically able to undergo the treatment and that a general physician was present when the teeth were extracted, that he was released from the hospital on August 10, 1967, and that he notified the employer he was still unable to report for work on the 14th and also a week later on the 21st of August. It took note of claimant's Exhibit 2 wherein Dr. Reynolds said he had recommended that Rose remain off duty until August 28, and Exhibit 1 which was Dr. Konegni's letter verifying the surgery including the removal of one unexposed root at the dentist's office September 5, 1967. It was also noted that the claimant, at the time of his return to work, did not submit a doctor's release and that the employer did not request one from him, that it was when the dentist's office manager advised Mr. Moritz claimant had not kept an August 15 appointment that the employer decided to terminate his employment. The commission recognized the nub of the dispute was when claimant could return to work, and observed that in hearings of this nature the technical rules of evidence are not followed. It stated greater weight should be given to the written statements of the claimant's physicians than to the telephone conversations with the personnel of the dentist's office, which seemed to conflict as to when the claimant should have reported for work. It, therefore, held the claimant had met the requirements of paragraph "d" and was relieved from disqualification by its provisions, and that he was thus entitled to benefits under the Iowa Employment Security Law.

The trial court reviewed the evidence and recognized the statements of the physician and surgeon as verifying the extent of the disability of claimant. It concluded the decision of the commission was sup-

ported by substantial and competent evidence and sustained its holding that the claimant Gerald Rose was entitled to unemployment benefits.

■ I. The Iowa Employment Security Law provides an individual shall be disqualified for benefits if he has left his work voluntarily without good cause "if so found by the commission." The law further provides he shall not be disqualified if the commission finds certain facts as set forth in subsections "a" to "f" of section 96.5 of the 1966 Code. Thus, the question of whether an employee is absent from work for the reason of illness or injury referred to in subsection "d" is a question of fact for the Iowa Employment Security Commission to determine from the relevant and competent evidence before it. It shall determine whether the claimant left his employment because of illness or injury upon the advice of a licensed and practicing physician, whether he advised his employer immediately of the necessity for such absence or obtained his consent, and whether after recovery he returned to work with a certificate of recovery by a licensed and practicing physician. Section 96.5(1) (d), Code of 1966.

■ II. It is a thoroughly established principle that fact findings by the Iowa Employment Security Commission are binding upon the courts on appeal when supported by substantial and competent evidence. Section 96.6, paragraph 9, Code of 1966; McComber v. Iowa Employment Sec. Comm., 254 Iowa 957, 958, 119 N.W.2d 792, 793, and cases cited therein; McCarthy v. Iowa Employment Sec. Comm., 247 Iowa 760, 764, 76 N.W.2d 201, 204; Gatewood v. Iowa Iron & Metal Co., 251 Iowa 639, 644, 102 N.W.2d 146, 150, and citations. See also 81 C.J.S. Social Security and Public Welfare § 232; 48 Am.Jur., Social Security, Unemployment Insurance, Etc., § 49. We have also said that each case of this character must turn upon its own facts. McCarthy v. Iowa Employment Sec. Comm., supra; Wolfe v. Iowa Unemployment

Comp. Comm., 232 Iowa 1254, 1257, 7 N.W. 2d 799, 800.

■ III. All hearings and appeals before the Iowa Employment Security Commission shall be conducted informally, and common law or statutory rules of evidence or other technical rules of procedure do not apply. Section 96.6(6), Code of 1966. Rule 3–C(1), Iowa Departmental Rules (provides: "All hearings shall be conducted informally in such manner as to ascertain the substantial rights of the parties. All issues relevant to the appeal shall be considered and passed upon. * * *" Of course, as we have often said, there must be a residuum of legal evidence to support the claim before an award can be made. Johnson v. Iowa Emp. Sec. Comm., 239 Iowa 816, 828, 32 N.W.2d 786, 792, and citations. An award cannot be based upon incompetent evidence and, if not supported by competent evidence, could not be sustained. Gatewood v. Iowa Iron & Metal Co., supra.

■ IV. The question before us is whether the facts found by the commission supported the conclusion reached and the court's order and decree. It found that claimant was not able to return to work before August 28 due to illness resulting from surgery performed during a leave of absence to have 24 teeth extracted. Claimant so testified, and the reasonableness of this claim was supported by the recommendations and directions given by his physician at the time of the surgery. Of course, the absence here was in a sense voluntary, but as pointed out in McComber v. Iowa Employment Sec. Comm., supra, 254 Iowa 957, 962, 119 N.W.2d 792, 795, and Raffety v. Iowa Employment Sec. Comm., 247 Iowa 896, 899, 76 N.W.2d 787, 789, if a return to work before recovery would have been detrimental to his health or endanger his life, the absence would not amount to quitting voluntarily without good cause. Section 96.5(1), Code of 1966.

In McComber v. Iowa Employment Sec. Comm., supra, we reviewed the facts found

by the commission and upheld .the trial court's decision that the facts found did not permit the commission's conclusion that claimant was disqualified. We pointed out therein that section 96.5(1) (d) provides that disqualification for benefits does not result if claimant left his work because of illness or injury and upon the advice of a physician and, upon knowledge of the necessity for such absence, immediately notified the employer who consented to the absence. There those requirements were met and we held the quitting was for good cause and affirmed the award.

In a similar case involving an injury to an employee who did not return to work for several weeks, we held in Raffety v. Iowa Employment Sec. Comm., supra, the facts justified a holding that the employee was qualified for benefits under this law. In that case an employee had been injured in the course of his employment which rendered him unable to work for several weeks. When he returned he had been advised by his doctor that the regular work he had been doing before the injury would be too heavy for him, but that he could do lighter work. He was not accepted on this condition and sought other employment. We held these facts justified a holding that the employee was qualified for benefits under the Iowa Employment Security Law.

■ In the case at bar claimant was absent with consent and subsequently advised the employer he was too ill to return to work prior to August 28 as recommended by his physician. The employer rejected his offer to return on that date, and the commission's conclusion that he was not disqualified under section 96.5(1) (d) must be upheld.

■ V. Appellant contends the commission based its decision largely upon claimant's Exhibits 1 and 2, which were "To Whom It May Concern" letters from claimant's physician Dr. Reynolds and the operating dental surgeon Dr. Konegni. They related to the work performed, the disability, and the period of recovery, the

reasonableness of which is at issue here. This evidence, appellant argues, was incompetent and should not have been considered by the commission because Dr. Reynold's letter was dated October 31, 1967, subsequent to the surgery, and there was no showing he had seen or treated the claimant during that period. A careful reading of this letter reveals it did no more than verify or confirm the claimant's testimony that at the time of the surgery Dr. Reynolds "recommended" that he "not return to work until August 28, 1967." It was not an attempt to fix his actual physical condition in the interim. For the purpose submitted it was not incompetent, and the weight of this testimony on the issue of his actual condition was for the commission alone. It apparently thought this verification of claimant's reasonable adherence to the physician's advice was justified.

■ In any event, after careful review of all the competent and relevant evidence before the commission, we must agree with the trial court that there was substantial evidence of claimant's disability, which sustains the commission's finding that he was not disqualified.

■ VI. There is no merit in the employer's contention that claimant failed to produce a certificate of recovery as called for in the statute when he returned to work on August 28. In this instance the employer did not request one when he returned, but informed claimant his services had already been terminated prior thereto. In fact, it appears the employer in its petition for review alleged it had discharged claimant. That it is bound by such an allegation in the petition, see Grantham v. Potthoff-Rosene Co., 257 Iowa 224, 230, 131 N.W.2d 256, 259.

We conclude the trial court did not err in affirming the decision of the commission.

Affirmed.

GARFIELD, C. J., and SNELL, MOORE, RAWLINGS, BECKER and LeGRAND, JJ., concur.

STUART and MASON, JJ., dissent.

STUART, Justice (dissenting).

I find myself in agreement with the deputy and the referee who denied compensation to this claimant.

In addition to the rules of law set forth in the majority opinion, with which I agree, I would point out that the burden of proof is upon claimant to establish his rights to benefits under the Iowa Employment Security Law. Spence v. Iowa Employment Security Commission (1957), 249 Iowa 154, 86 N.W.2d 154.

I would also point out claimant left work voluntarily without good cause attributable to the employer. In order to show his right to unemployment benefits he must bring himself within the exception contained in section 96.5(1) (d) providing it is not a voluntary quit if:

"He left his employment because of illness or injury upon the advice of a licensed and practicing physician, and upon knowledge of the necessity for such absence immediately notified his employer, or his employer consented to such absence, and after recovering from such illness or injury when recovery is certified by a licensed and practicing physician, he returned to his employer and offered his service and his regular work or comparable suitable work was not available  *  *  *."

As we are bound by the findings of the commission if they are supported by substantial and competent evidence, we must first look to these findings. The commission found:

"The claimant was employed over three years as a welder for Wilson Trailer Company of Sioux City, Iowa, to August 8, 1967. The claimant requested and was granted a leave of absence of three working days to have his teeth pulled. The record shows that he first had a general physical examination to determine if he was physically fit to have the dental surgery. After being declared as physically able to undergo the treatment, he entered St. Vincents Hospital where he had twenty-three teeth extracted. The general practitioner was present when the teeth were extracted on August 8, 1967. (Claimant Exhibit No. 1) He was released from the hospital on August 10, 1967.

"On August 14, 1967, he telephoned the employer that he was still unable to report to work. A week later, August 21, 1967, he again reported to the employer that he was unable to report for work.

"The claimant submitted two statements from his attending physicians verifying his hospitalization, and the one from Dr. W. E. Reynolds states the claimant was advised to remain off duty until August 28, 1967. (Claimant Exhibit No. 2) The statement from the dental surgeon verifies the extraction of twenty-three teeth for pyorrhea and rampant caries. There were two sutures in the right lower molar area and left lower molar area. On September 5, 1967, one unexposed root was removed in the office.

"The employer testified that the company arranged for a physical examination for the claimant to determine if he was physically able to undergo the extractions, and was given a leave of absence from August 8, 1967, through August 13, 1967. The employer called the dental surgeon by telephone prior to the extractions and was informed by the office nurse that three days off duty should be sufficient. On August 14, 1967, the employer's personnel director telephoned the dental surgeon and was told that the claimant could return to work as he had been released.

"Another telephone call was made by the employer to the dental surgeon's office on August 25, 1967, and the office nurse advised the claimant had not kept the August 15th appointment with the dentist. It was at that time the employer decided not to rehire the claimant. When the claimant

reported for work on August 28, 1967, he was told he had been terminated. The record shows that the claimant did not submit a doctor's release, nor did the employer request one from him."

Based upon these findings the commission concluded: "In this case, the Commission must choose between the telephone conversations between the employer and the claimant's dentist and his office nurse and the written statements of the claimant's doctors. The Commission must hold that greater weight must be given the written statements of the claimant's physicians than to the telephone conversations. The Commission, therefore, holds that the claimant has met the requirements of paragraph 'd' of the above section of the Iowa law and is relieved from disqualification by its provisions."

I do not believe there is anything in the doctor's written statements which contradict other findings and support these conclusions.

Dr. Konegni's statement only describes the treatment given plaintiff. Dr. Reynolds statement states only that he recommended to claimant at or before the time of surgery that he not return to work until August 28. He did not examine him after that time.

McComber v. Iowa Employment Security Commission, 254 Iowa 957, 119 N.W.2d 792, and Raffety v. Iowa Employment Security Commission, 247 Iowa 896, 76 N.W.2d 787, relied on by the majority are not in point. In both cases it was decided there was no voluntary quit because the cause of the absence was attributable to the employer.

In McComber, claimant left the employment because she was allergic to the woolen materials with which she had to work. We said: "Section 96.5, subd. 1, par. d

provides that disqualification for benefits does not result if the claimant left his work because of illness or injury and upon the advice of a physician and upon knowledge of the necessity for such absence immediately notified the employer who consented to the absence. These things were done; but the difficulty here is that, according to the facts found by the Commission, the work itself was responsible for the illness. Of course the quitting of the employment was in a sense voluntary on the part of the plaintiff; but we conclude that the facts found by the Commission show such quitting was for good cause attributable to the employer." 119 N.W.2d at 795.

In Raffety, claimant was injured on the job. We said: "Where factors or circumstances directly connected with employment result in illness or disease to an employee and make it impossible for him to continue therein because of serious danger to his health, termination of employment for this reason may correctly be said to be involuntary and for 'good cause attributable to the employer', even though the employer be free from all negligence or wrongdoing in connection therewith." 76 N.W.2d at 789. Section 96.5(1) (d) was not involved.

It may very well be claimant was not able to return to work after such major dental surgery, but in my opinion we are setting an unsound precedent if we hold plaintiff can meet the burden imposed upon him by section 96.5(1) (d) by using his own judgment as to his ability to return to work completely unsupported by competent medical evidence showing his condition was different from that expected by the employer when granted a limited leave of absence.

I would reverse.

MASON, J., joins in this dissent.