John (Jack) P. ROONEY, Appellee,

v.

EMPLOYMENT APPEAL
BOARD, Appellant,

Shenanigans, Inc., Respondent.

No. 89–73.

Supreme Court of Iowa.

Nov. 22, 1989.

Blair H. Dewey and William C. Whitten, Des Moines, for appellant.

Frank Cal Tenuta, of Legal Services Corp. of Iowa, Sioux City, for appellee.

Considered by SCHULTZ, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

The sole issue here is whether an employee voluntarily quit his employment without good cause attributable to his employer. The district court concluded the employee voluntarily quit but did so because of good cause attributable to the employer. The court then reversed the agency's decision that had denied the employee unemployment benefits. We reverse and remand.

John (Jack) P. Rooney, the petitioner, began working for Shenanigans, Inc., a bar and liquor store, in May 1987. His duties included maintenance, sales, and delivery.

On the advice of a family doctor, Rooney entered treatment for alcoholism in October 1987. Rooney's substance abuse counselor, a registered nurse with six years of psychiatric experience, advised Rooney to quit his employment because "working in a tavern would interfere with his sobriety."

At first Rooney ignored the advice because he had no other job. About a month later, Rooney did quit because he "slipped and drank" the day he quit. He felt that working at Shenanigans was having an effect on his ability to maintain his sobriety. He decided then that he should do what his counselor had advised.

Before Rooney entered treatment he had been drinking during working hours. Rooney believed that had he returned to work, he would have continued to drink, because

draft beer was readily available on the employer's premises.

Several weeks after he quit, Rooney filed a claim with Job Service of Iowa for unemployment benefits. On his claim form Rooney explained why he quit:

I worked for Shenanigans from 5/1/87 to 11/28/87 as a maintenance worker—I also worked as cashier and delivery man in the liquor store. I had developed a drinking problem and for the six to seven weeks prior to my separation had been in treatment. I was advised by my counselors to quit the job because of the environment. On 11/28/87 I had a relapse—decided that I needed to get away from the environment—I do not recall much about that day since I had been drinking but I decided to quit the job.

The employer filed the following response to Rooney's claim:

On 11/28/87 Jack was scheduled to work.... He went to supper about 5:15 p.m.—did not return to work. He offered to come in and finish a shift. but since it was apparent to me he had been drinking I told him just to come in on Monday and talk to me. He told me that he had to quit and did not return to work. I had been aware that he had a drinking problem prior to his notification of quitting.

A claims deputy allowed Rooney's claim. The deputy found that Rooney had quit his employment because working conditions were detrimental to him. The deputy then concluded that Rooney had good cause for quitting and did not disqualify him from receiving benefits. In support of his decision, the deputy cited Iowa Administrative Code 345–4.26(96) which provides:

Voluntary quit with good cause attributable to the employer and separations not considered to be voluntary quits.

. . . .

4.26(4) The claimant left due to intolerable or detrimental working conditions.

The employer appealed, and a hearing was held at which Rooney and two employer representatives testified. Following the hearing, a hearing officer filed a written decision in which he reversed the decision of the deputy.

The hearing officer made the following findings:

The claimant has the illness of alcoholism. The claimant quit his employment because continuing to work in an environment with liquor accessible was considered by his substance abuse counselor to be detrimental to his sobriety. In this regard, that would be detrimental or dangerous to his health. Therefore, the claimant quit his employment because of an illness.

Having found that Rooney quit because of an illness, the hearing officer concluded that Iowa Code section 96.5(1)(d) (1987) applied. This provision provides:

An individual shall be disqualified for benefits:

1. *Voluntary quitting.* If the individual has left work voluntarily without good cause attributable to the individual's employer, if so found by the division of job service. But the individual shall not be disqualified if the division finds that:

. . . .

d. The individual left employment because of illness, injury or pregnancy upon the advice of a licensed and practicing physician, and upon knowledge of the necessity for absence immediately notified the employer, or the employer consented to the absence, and after recovering from the illness, injury or pregnancy, when recovery was certified by a licensed and practicing physician, the individual returned to the employer and offered to perform services and the individual's regular work or comparable suitable work was not available, if so found by the division, provided the individual is otherwise eligible.

Because Rooney did not quit on the advice of any licensed and practicing physician, the hearing officer concluded his reason for quitting—regardless of how good it was—was not attributable to the employer. This conclusion left the hearing officer no choice but to deny Rooney eligibility for unemployment benefits.

Rooney appealed this decision to the Employment Appeal Board, contending that section 96.5(1)(d) did not apply. In support of his contention, Rooney argued that his illness was aggravated by factors and circumstances associated with his job; therefore, he quit because of good cause attributable to his employer. The board disagreed, determined that the hearing officer's decision was correct, and adopted the officer's findings of fact, reasoning, and conclusions of law.

Rooney then petitioned for judicial review in the district court pursuant to section 96.6(3), urging the same contention and argument he had made before the board. The district court agreed, found that Rooney had quit for good cause attributable to the employer, and reversed the board's decision. This appeal by the board followed.

■ I. When reviewing a district court decision on the validity of agency action, we determine whether the district court correctly applied the law. In doing so, we apply the standards of Iowa Code section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. If our conclusions are the same, we must affirm; if not, we reverse. *Iowa Fed'n of Labor v. Department of Job Serv.*, 427 N.W.2d 443, 445 (Iowa 1988).

■ II. The question here is simply whether the agency was correct in applying Iowa Code section 96.5(1)(d) to the facts. Although we give weight to an agency's construction of statutes it administers, we must make an independent determination of their meaning. *Ellis v. Iowa Dep't of Job Serv.*, 285 N.W.2d 153, 156 (Iowa 1979).

Voluntary quitting within the meaning of section 96.5(1) is attributable to the employer

[w]hen factors or circumstances directly connected with employment aggravate or cause illness or injury to an employee which makes it impossible for him to continue in the employment.

*McComber v. Iowa Employment Sec. Comm'n*, 254 Iowa 957, 962, 119 N.W.2d 792, 795–96 (1963) (claimant worked with woolen materials to which she developed an allergy). *See also Ellis*, 285 N.W.2d at 156 (claimant was allergic to natural Christmas trees, and one was at place of employment); *Rafferty v. Iowa Employment Sec. Comm'n*, 247 Iowa 896, 900, 76 N.W.2d 787, 789 (1956) (claimant contracted jaundice attributed to an on-the-job back injury). When, however, such voluntary quitting is due to an illness or injury having no connection with the employment, the quitting is not attributable to the employer. Iowa Code § 96.5(1); *Moulton v. Iowa Employment Sec. Comm'n*, 239 Iowa 1161, 1165, 34 N.W.2d 211, 213 (1948) (claimant quit because of pregnancy).

Here Rooney quit because he felt working at Shenanigans was having an effect on his ability to stay sober. If true, this is good cause attributable to the employer according to *McComber* and its progeny. In these circumstances the statutory requirement in section 96.5(1)(d) that the individual quit on the advice of a licensed and practicing physician simply does not apply.

As we noted, the claims deputy found that Rooney had left his employment because working conditions were detrimental to Rooney. So the claims deputy properly concluded that Rooney had good cause for quitting which was attributable to the employer. In effect, the claims deputy followed the *McComber* rule.

■ The board, on the other hand, ignored *McComber*, believing that section 96.5(1)(d) controlled because Rooney was suffering from an illness—alcoholism. What the board failed to consider is that an illness may be aggravated by factors or circumstances directly connected with the employment. In that event, *McComber* teaches that an individual does have good cause for quitting which is attributable to the employer. Because it failed to take this factor into account in its analysis, the board neglected to make one important factual determination: whether Rooney's illness was aggravated by factors or circumstances directly connected with the employment.

This factual determination depended upon whether the board was persuaded that the working environment aggravated

**316**

Rooney's illness. Had the board been inclined to make such a finding, there certainly was enough evidence to support the finding.

For example, Rooney testified he quit because he felt that working at Shenanigans was having an effect on his ability to stay sober. More importantly, his substance abuse counselor believed that the working environment was such an impediment to Rooney's chances of recovery she advised him to quit. Finally, the environment certainly presented Rooney with a constant temptation to drink—draft beer was readily available to him during working hours. Had Rooney continued to work in this environment, the board might have been faced with a different issue: disqualification because of misconduct.

The district court did focus on the right issue, but, in contrast to the board, it went too far. The court found that factors and circumstances directly connected with Rooney's employment did aggravate his illness. Because this was a factual determination that only the board could make, the court erred in making it. It should have remanded the case to the board.

Accordingly, we reverse and remand this case to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.