**John WHITE, Appellee,**

v.

**EMPLOYMENT APPEAL BOARD and Jensen Transport, Inc., Appellants.**

**No. 91–1404.**

Supreme Court of Iowa.

July 22, 1992.

James F. Kalkhoff of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for appellant Jensen Transport.

William C. Whitten, for appellant Employment Appeal Bd.

Linnea M. Nelson of Legal Services Corp. of Iowa, Waterloo, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

The appellant, Jensen Transport, Inc., challenges the district court's reversal of an employment appeal board decision that denied John White, the appellee, unemployment compensation benefits. Jensen Transport contends that the district court erroneously concluded that White left his employment with Jensen Transport "involuntarily and for good cause attributable to [Jensen]." Stated differently, Jensen maintains that because White voluntarily quit his job with Jensen without good cause attributable to them, White is disqualified from receiving unemployment benefits pursuant to Iowa Code section 96.5(1) (1991). We reverse and remand for further proceedings by the employment appeal board.

I. *Background Facts.*

White began his employment as an over-the-road truck driver for Jensen Transport on May 8, 1980. In October 1989, White suffered a heart attack while out of town on a work assignment and was unable to return to work until January 2, 1990. On February 1, 1990, White suffered a second heart attack, and, pursuant to his doctor's orders, did not return to work until August 1990. In August, White returned to Jensen Transport, but consistent with his cardiologist's instructions, he indicated that he would be unable to do any driving.

White's cardiologist, Dr. A. Ersin Atay, indicated in a letter that White had received an automatic cardioverter defibrillator and that driving would be contraindicated. Atay's recommendation apparently arises from the potential for a brief period of unconsciousness prior to the defibrillator's delivery of a reviving current to White's heart should it ever stop beating.

As a consequence of White's inability to operate a truck, a representative of Jensen Transport told White that there was no available work for him with the company. Thereafter, on September 7, 1990, White filed a claim for unemployment benefits with the division of job service. After a fact-finding interview on September 21, 1990, White's request for benefits was denied by a job service representative. White

appealed the job service representative's decision by requesting an in-person hearing, which was held on November 28, 1990. After receiving testimony from White and Jensen Transport's president, Jerry Jensen, the presiding administrative law judge reversed the job service representative's decision, thus allowing White to receive unemployment benefits.

On December 19, 1990, Jensen Transport appealed the administrative law judge's decision to the employment appeal board. The employment appeal board concluded that because White's separation from employment was a "voluntary quit" that was "without good cause attributable to [White's] employer," he was disqualified from receiving unemployment benefits pursuant to Iowa Code section 96.5(1). Iowa Code section 96.5(1) (1991) provides in pertinent part as follows:

**96.5   Causes for disqualification.**

An individual shall be disqualified for benefits:

1. *Voluntary quitting.* If the individual has left work voluntarily without good cause attributable to the individual's employer, if so found by the division of job service. But the individual shall not be disqualified if the division finds that:

. . . .

d.   The individual left employment because of illness, injury or pregnancy upon the advice of a licensed and practicing physician, and upon knowledge of the necessity for absence immediately notified the employer, or the employer consented to the absence, and after recovering from the illness, injury or pregnancy, when recovery was certified by a licensed and practicing physician, the individual returned to the employer and offered to perform services and the individual's regular work or comparable suitable work was not available, if so found by the division, provided the individual is otherwise eligible.

The employment appeal board further concluded that White could not avail himself of the subparagraph (d) exception to the voluntary quit disqualification since subparagraph (d) requires that the employee be capable of performing "the individual's regular work," which the board found White was unable to do.

White then sought judicial review of this final agency determination in the district court. The court determined that the decision of the employment appeal board was "in violation of an agency rule and was an error of law" insofar as the board determined that White left his position with Jensen Transport "voluntarily without good cause attributable to [Jensen]." Accordingly, the decision of the employment appeal board was reversed.

The issue presently before us is thus whether White's cardiac-arrest induced departure from Jensen Transport is to be deemed a "voluntary quit" that was "without good cause attributable to [Jensen Transport]" and, if so, whether the subparagraph (d) exception to the subsection one disqualification provision is applicable.

II.   *Standard of Review.*

When reviewing a district court decision regarding the validity of agency action, we apply the standards of Iowa Code section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. If our conclusions are the same, we must affirm; if not, we reverse.

*Rooney v. Employment Appeal Bd.,* 448 N.W.2d 313, 315 (Iowa 1989). We give weight to an agency's construction of the statutes that it administers, but, nevertheless, we must make an independent determination of their meaning. *Id.* at 315. We review the agency action to determine if there is substantial evidence in the record made before the agency to support its decision. Iowa Code § 17A.19(8)(f).

III.   *Was White's Departure "Without Good Cause Attributable to [Jensen Transport]?"*

Section 96.5(1) disqualifies an unemployed individual from receiving benefits under chapter 96 to the extent that the individual quits "voluntarily without good cause attributable to the individual's em-

ployer." We have said that to the extent an employee is absent involuntarily from work, "the words 'attributable to the employer' simply have no application." *Ames v. Employment Appeal Bd.*, 439 N.W.2d 669, 674 (Iowa 1989). Thus, for an individual to be disqualified from unemployment benefits under section 96.5(1), it must be demonstrated that the individual left work voluntarily *and* without good cause attributable to the individual's employer. The district court relied on this conclusion from *Ames* in reversing the agency's denial of benefits. Because it believed that White left his employment because of physical disability, the court concluded that this leaving was not voluntary. Although we find considerable logic in the district court's extension of the *Ames* decision, we conclude that unemployment due to illness raises policy considerations which call for a continuation of the rules laid down in our cases on illness terminations antedating *Ames* and *Rooney*, decided the same year. Under these rules, if White's disability was not work related, the agency properly imposed a disqualification. If, however, the cause of White's disability was work related, the disqualification was improper.

We have held that an illness-induced quit is attributable to one's employer only under two circumstances. First, when the illness is either "caused or aggravated by circumstances associated with the employment," regardless of the employee's predisposition to succumb to the illness, the separation will be deemed to be with "good cause attributable to the individual's employer." *Shontz v. Iowa Employment Sec. Comm'n*, 248 N.W.2d 88, 91 (Iowa 1976); *Rooney*, 448 N.W.2d at 315–16 (noting that a recovering alcoholic who terminates employment with bar and liquor store may do so without disqualifying himself for unemployment benefits to the extent that the employment is found to have "aggravated" his condition). Second, when the employer effects a change in the employee's work environment such that the employee would suffer aggravation of an existing condition if she were to continue working, the resulting separation has been held to be with good cause attributable to the employer.

*Ellis v. Iowa Dep't of Job Serv.*, 285 N.W.2d 153, 156–57 (Iowa 1979) (claimant's showing that recently installed Christmas tree would aggravate her allergies was sufficient to constitute a "quit" that was attributable to her employer).

The foregoing "attribution rules" strike a proper balance between the underlying policy of the Iowa Employment Security Law, which is to provide benefits for "persons unemployed through no fault of their own," Iowa Code § 96.2, and fundamental fairness to the employer, who must ultimately shoulder the financial burden of any benefits paid. *See* Iowa Code § 96.7. More specifically, insofar as the Employment Security Law is not designed to provide health and disability insurance, only those employees who experience illness-induced separations that can fairly be attributed to the employer are properly eligible for unemployment benefits. *See Butts v. Iowa Dep't of Job Serv.*, 328 N.W.2d 515, 517 (Iowa 1983) ("[T]he legislature has merely determined not to provide maternity leaves" under chapter 96); *see also* Iowa Code § 96.4(3) (individual must be "able to work," "available for work" and "earnestly and actively seeking work" to qualify for unemployment benefits); *Kuna v. Commonwealth Unemploy. Comp. Bd. of Review*, 512 A.2d 772, 776 (Pa.Cmwlth.1986) ("It is axiomatic that unemployment compensation is not health insurance and does not cover physically or mentally ill persons during periods [that] they are unemployable."). It should be noted, however, that an illness or disability "may correctly be said to be ... attributable to the employer even though the employer [is] free from all negligence or wrongdoing in connection therewith." *Raffety v. Iowa Employment Sec. Comm'n*, 247 Iowa 896, 900, 76 N.W.2d 787, 789 (1956) (citations omitted).

The decision of the employment appeal board cited section 96.5(1)(d) in concluding that White was disqualified from benefits. It stated that White was unable to obtain a department of transportation license and without it could not perform the work of a truck driver. In these circumstances, it was held that White's quit was without good cause attributable to his employer, a disqualifying effect.

Subparagraph (d) of Iowa Code section 96.5(1) excepts certain individuals who have left as a result of "illness, injury, or pregnancy" from the application of the subsection one disqualification. However, subparagraph (d) requires, among other things, that the individual "has returned to the employer and offered to perform services and the individual's regular work or comparable suitable work was not available." Iowa Code § 96.5(1)(d).

Both the job service representative and the employment appeal board concluded that White was unable to satisfy this last requirement on the ground that he was "unable to perform the work of an over-the-road truck driver." The subparagraph (d) exception is applicable only "where a claimant is *fully recovered* and his former position was not held open upon his return." *Hedges v. Iowa Dep't of Job Serv.,* 368 N.W.2d 862, 867 (Iowa App.1985); *see also Shontz,* 248 N.W.2d at 91 (noting that an automobile body repairman who suffers a cardiac arrest and then returns to work and offers his services "on the condition the job be sedentary and involve little walking or effort ... obvious[ly] did not come within the exception in § 96.5(1)(d)"). White clearly did not satisfy this standard. By his own admission, and pursuant to his cardiologist's instructions, he is unable to drive a truck as a result of his defibrillator implant and the potential for lapses of consciousness. Consequently, the subparagraph (d) exception to the subsection one disqualification is not applicable to White's situation.

Regarding the disqualification provisions of section 96.5(1), Jensen Transport argues that White is ineligible because his heart trouble is not work related. On this point, reference is made to a question by the administrative law judge of White, who was unrepresented by counsel, as follows:

ALJ: Now, I don't find anything in the file indicating that you are claiming that the heart condition was brought on by the employment?

WHITE: No sir.

Apart from the inconclusiveness of the answer, the record also shows that White stated that his heart problem was diagnosed as "ventricular ticardia which is pretty well deemed to be stress related." In testimony by Jerry Jensen, president of Jensen Transport, he was asked and answered as follows:

Q: Now, you were aware I gather that he was receiving treatment for this heart condition?

EMPLOYER: Oh, yes, because he was on the road when this happened.

The decision of the employment appeal board contains no findings as to whether White's heart condition is job related. In *Shontz,* we stated: "It is well established that a heart injury may be caused by employment activity." 248 N.W.2d at 92. We remanded in *Shontz* because evidence was not developed on the issue of whether the disability was caused or aggravated by factors and circumstances associated with employment. The case at bar is similar in that there is no finding on this issue nor a substantial basis to support one. *See Rooney,* 448 N.W.2d at 313. A finding on this issue is the province of the board. Additional evidence should be taken by the board on remand regarding this issue.

Accordingly, we reverse and remand to the board for further proceedings consistent herewith.

REVERSED AND REMANDED.