BILTMORE ENTERPRISES,
INC., Appellant,

v.

IOWA DEPARTMENT OF JOB
SERVICE, Appellee.

No. 68373.

Supreme Court of Iowa.

May 18, 1983.

Alan E. Fredregill of Gleysteen, Harper, Eidsmoe, Heidman & Redmond, Sioux City, for appellant.

Joseph L. Bervid, Walter F. Maley and Blair H. Dewey, Iowa Dept. of Job Service, Des Moines, for appellee.

CARTER, Justice.

This is an appeal by an employer from a district court decision affirming final agency action involving an award of unemployment benefits. The issues presented are (1) whether the agency erroneously calculated the claimant's base period wage and length of his unemployment period, (2) whether the agency failed to consider the special circumstances of claimant's dual employment situation and (3) whether the agency erred by refusing to consider claimant's alleged unavailability for work. We consider these issues separately and affirm the decision of the district court.

Clarence J. Suntken was employed by petitioner Biltmore Enterprises, Inc. (Biltmore), as a part-time employee during the third and fourth quarters of 1979, earning $3.25 per hour. This employment was a "second" job, and Suntken was simultaneously employed with another employer, A.B. Dick Products Co., working forty hours

a week at $4.25 per hour. Suntken was laid off by Biltmore in January of 1980 and continued with his full-time, regular employment with A.B. Dick Products Co. until April 25, 1980, when he was laid off by that company.

After being laid off by A.B. Dick Products Co., Suntken applied for and received unemployment benefits of approximately $131 per week. At or about this time, he resumed working occasionally as a bartender for Biltmore on an on-call basis. On or about May 20, 1980, Biltmore was notified by Iowa Department of Job Service that Suntken's unemployment benefits would produce a potential charge on its account in the amount of $987. Shortly thereafter, Biltmore offered Suntken a job as a dishwasher and weekend bartender for $3.25 an hour for 33–36 hours a week. Suntken refused this job, and Biltmore protested to Iowa Department of Job Service seeking to disqualify Suntken from unemployment benefits on the ground that he had refused an offer of suitable employment. Biltmore simultaneously terminated Suntken's occasional employment as a bartender.

The Iowa Department of Job Service determined that Suntken's refusal to accept the job offered by Biltmore did not disqualify him from receiving further unemployment benefits. That finding was based upon the determination that Biltmore's offer was unsuitable because it did not equal 100 percent of Suntken's gross average weekly wage as required by Iowa Code section 96.5(3)(a) (1981). This determination was upheld by an agency hearing officer and by the district court on judicial review.

I. *Calculation of Average Weekly Wage and Length of Unemployment.*

A. *Average weekly wage.* Biltmore contends on this appeal that the agency erred in calculating Suntken's average weekly wage for purposes of evaluating the suitability of the job offer he received from Biltmore. In order to be deemed suitable employment, Iowa Code section 96.5(3)(a) (1981) requires that during the first five

weeks of unemployment a job offer must provide for 100 percent "of the [unemployed] individual's average weekly wage for insured work paid to the individual during that quarter of the individual's base period in which the individual's wages were highest." The agency's calculations established Suntken's average weekly wage to be $213.60, an amount which was not equaled by Biltmore's job offer of 33–36 hours per week at $3.25 per hour.

Biltmore urges that the agency calculations improperly combined the earnings received by Suntken during the period that he was holding two jobs, thus distorting his earning potential. We need not consider whether it would be error to total the wages from concurrently held jobs in making the base period calculations required by section 96.5(3)(a). The record clearly reflects that this was not done in the present case.

Under the provisions of Iowa Code section 96.19(15)–(17) (1981), Suntken's base period includes the five calendar quarters prior to his April 28, 1980, application for benefits. During the first calendar quarter of 1979, he was employed by Wilson Trailer Company and earned gross wages of $2776.62. That was the quarter during the base period when Suntken's gross wages were the highest. The agency used the wages from that quarter in making its computation of average weekly wage. It divided the gross wages received in the quarter by thirteen to produce a figure of $213.60. This amount accurately reflects Suntken's average weekly wage for insured work during that quarter of the base period in which his wages were highest. Payment of that wage or a higher wage was required during the first five weeks of his unemployment to satisfy the statutory test of "suitable employment." The agency's determination on this question was correct.

■ B. *Length of unemployment.* Under the provisions of section 96.5(3)(a), the wage requirements for "suitable employment" decrease as the length of unemployment increases. Biltmore challenges the agency determination of the length of

Suntken's unemployment for purposes of applying the statutory definition of "suitable employment." The agency determined that Suntken had been unemployed only four weeks when Biltmore offered him the job which led to the present controversy. Biltmore argues that at that time Suntken had been unemployed for over twenty weeks. This argument assumes that unemployment commenced when Suntken was laid off by Biltmore.

Benefits cannot be taken until an employee is "unemployed." Section 96.19(9) defines total and partial unemployment.

  a. An individual shall be deemed "totally unemployed" in any week with respect to which no wages are payable to him or her and during which he or she performs no services.

  b. An individual shall be deemed partially unemployed in any week in which, while employed at his or her then regular job, he or she works less than the regular full-time week and in which he or she earns less than his or her weekly benefit amount plus fifteen dollars.

  An individual shall be deemed partially unemployed in any week in which he or she, having been separated from his or her regular job, earns at odd jobs less than his or her weekly benefit amount plus fifteen dollars.

The fact that Suntken was laid off from a part-time bartending job does not mean that he was either totally or partially unemployed while he was still working forty hours per week. In *McCarthy v. Iowa Employment Security Commission,* 247 Iowa 760, 761, 764, 76 N.W.2d 201, 205 (1956), we said:

  We realize that when we get into the field of dual or possibly multiple concurrent jobs with two or more employers, vexing questions may arise as to what constitutes employment or unemployment under this law … But at what point "unemployment" arises may sometimes be difficult of determination.

In *McCarthy,* we were presented with the problem of determining whether a claimant was disqualified from receiving benefits

where he had quit a part-time job, but continued working at his full-time job until he was laid off. In that case, the claimant was not considered to be "unemployed" until he was laid off from the full-time job, and was therefore not disqualified from receiving unemployment benefits because he had voluntarily quit his part-time job. In the present case, the agency correctly determined that Suntken was not "unemployed" while continuing to work at A.B. Dick Products Co.

### C. *Motive for Refusing Employment.*

■ Biltmore argues that the real reason that Suntken refused its job offer was that it would pay him only $117 per week while his weekly unemployment benefit was $131. It produced evidence that when Suntken was offered the job, he said he preferred to ride his motorcycle. This evidence affords Biltmore no basis for asserting that Suntken must be disqualified from unemployment benefits. In order for work to be considered "suitable" under section 96.5(3), it is mandatory that the gross weekly wages equal or exceed the statutorily prescribed percentages of base period wages. If gross weekly wages for the work do not equal or exceed those sums, the work is unsuitable as a matter of law and the actual motive of a claimant in refusing the work is immaterial.

While Biltmore seeks to paint a picture of disparate treatment of part-time employers by the agency in the payment of jobless benefits, the present case does not provide a good vehicle for such a claim. Biltmore contends that its job offer to Suntken of 33–36 hours a week was comparable to his previous employment there. This is a rather high number of hours to be classified as part-time employment. Regardless of how the employment with Biltmore is characterized, it is clear that it was the rate of hourly wage rather than the number of hours worked which renders the employment unsuitable under the statutory definition. Even if Suntken had been offered a full-time job at Biltmore's hourly rate, it would fail to qualify as suitable employment because of the higher wage Suntken had received from Wilson Trailer Company during the base period.

■ With respect to the matter of suitable work, the issue in the present case is not whether an offer to rehire a part-time employee at his former wage is suitable employment. The issue is whether an offer to rehire any employee full or part-time at less than his highest average base period wage is suitable employment. In order to sustain Biltmore's claim in the present case, we would have to hold that an offer by an employer to rehire a former employee at the wage level he or she had previously received would meet the wage requirement of suitable employment regardless of the existence of a higher wage during the employee's base period. There is simply no room to reach this result under the language of section 96.5(3)(a).

This result may be relied upon to bring dissatisfaction to an employer whose account is charged for unemployment benefits in spite of offering to return the recipient of the benefits to the same job previously held. Such reaction is all the more likely during a period of high unemployment. But the agency in administering Suntken's claim was only following the requirements of the statute. We may not disturb its decision.

### II. *Ramifications of Dual Employment.*

Biltmore next argues that it is entitled to special treatment whether or not the agency's rules make such provision. While its argument in this regard is somewhat difficult to follow, it appears to be based on our statement in *McCarthy v. Iowa Employment Security Commission*, 247 Iowa 760, 765, 76 N.W.2d 193, 201 (1956) that "the necessity of reinterpretation [of agency rules] to meet the problem of dual or multiple concurrent employment and employers doubtless may require some change or elaboration of rules to meet more complex situations." Biltmore appears to argue that based on this suggestion in *McCarthy,* we have free rein to depart from the applicable statutes and regulations in determining its case. We disagree.

The issue in *McCarthy* did not involve either suitable employment or payment of benefits from a part-time employer's account. It involved only an issue of statutory interpretation. The issue was whether the insulation of an employer's account from payment of benefits as a result of a "voluntary quit" is triggered by the quitting of any job during the base period or only by quitting a job with the employer whose account is involved. The result reached in *McCarthy* was not inconsistent with any statute or regulation. Based on the reasons discussed in division I of this opinion, any action on our part which would recognize Biltmore's offer of employment in the present case as "suitable employment" would be directly contrary to statute.

A portion of Biltmore's argument based on the language in *McCarthy* implies that error was committed by the agency in the manner in which Suntken's employment benefits were charged against the account of the respective employers where he had garnered wage credits. It may not prevail on this argument for two reasons. First, the matter of whose account should be charged and in what amount was not raised by Biltmore as an issue before the agency or in the district court. It may not be presented for the first time on appeal. *Farmers Elevator Co. v. Manning*, 286 N.W.2d 174, 176 (Iowa 1979); *Davenport Community School District v. Iowa Civil Rights Commission*, 277 N.W.2d 907, 909 (Iowa 1979). Second, Biltmore only implies that there was some legal error in the manner in which its account was charged. It does not specify what such error was and refers us to no statute or regulation which would support this claim. These deficiencies preclude the granting of any relief based on any theory that Biltmore's account was improperly charged.

III. *Failure of Agency to Consider Additional Grounds for Disqualification.*

Biltmore also argues that the agency erred when it refused to consider Suntken's alleged unavailability for work and his failure to make an earnest and active search for work. We quote the following from the administrative hearing:

ATTORNEY: Yes, Mr. Schlak, I have a question about the issues that are to be raised. The only one that's defined so far is the one pertaining to the job offer. Since this—since the record in this matter does determine what issues can be raised on a subsequent appeal in this matter, I'd also be interested in raising the issues of—of availability for work, earnest and active search for work, in that regard. And—and take testimony on those matters, too.

Q. Well, sir, I don't have a specific decision of a claims deputy holding the claimant ineligible for benefits. If you have information you think would have a bearing on that, this should be presented to the local office where proper decision could be made at that level, sir. In other words, they—the claims deputy at the local office in this case in Sioux City would appear would have to digest this information, correlate it, verify it and then make a decision of some sort before I can review it. In other words, my role is limited to reviewing decisions which is already—which have already been made—action already taken by the agency.

ATTORNEY: So, at this point we—we don't have an opportunity to raise these other issues?

Q. Not before me, sir, no.

The procedure that an employer must follow if he or she wishes to appeal from the decision of a claims deputy is set out in 370 Iowa Administrative Code section 6. This section details the appeals procedure, and provides in relevant part as follows:

The hearing shall be confined to evidence relative to the issue stated on the notice of hearing. An issue stated in terms of a voluntary leaving or a discharge shall be construed generally to be a single issue concerning the separation from employment so that evidence on either or both kinds of separation may be received. However, if an entirely new issue is raised at the hearing by a party,

the hearing officer shall announce willingness to take testimony on the new issue and if the parties waive their right to notice and make no other objection, the hearing officer shall proceed to take such evidence.

(1) However, if there is objection by any party, the hearing officer shall adjourn the hearing and set it down for rescheduling on the new issue with notice to all interested parties.

(2) The hearing officer shall issue a decision on the issue for which notice had been given and hearing held.

370 I.A.C. § 6.2(5)(d).

The notice of hearing in the present case designated the issue as "Job Offer Refused." The agency contends that the regulation for taking evidence on a new issue before the hearing examiner has reference to issues which have previously been resolved by a claims deputy but which were not included in the notice of hearing. It argues that this regulation was not intended to permit issues to be determined for the first time before the hearing officer. No determination of Suntken's availability for work had been made by a claims deputy. While the rule is not entirely clear, we believe the provision for adjourning the hearing and rescheduling it on a *new* issue is consistent with Biltmore's contention that its claim of disqualification based on availability for work should have been considered by the agency. The case is affirmed on all issues decided by the agency but is reversed on the ground of failure to consider the additional issue which we have noted. The case is remanded to the agency for consideration of that issue. Costs on appeal are taxed two-thirds to appellant and one-third to the agency.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED TO THE AGENCY.

All justices concur except LeGRAND, Senior Judge, and HARRIS and McGIVERIN, JJ., who dissent.

LeGRAND, Senior Judge (dissenting).

In this case, the majority burdens a part-time employer with obligations under the Iowa Employment Security Law even though that employer is willing to continue the employment under substantially the same terms and conditions as previously existed. I think this is both unfair and unnecessary, and I therefore dissent.

This matter is here because C.J. Suntken held three separate jobs during the base period for which benefits were computed as set out in the majority opinion. He was employed full time by Wilson Trailer Co., whose employ he left voluntarily. He then worked full time for A.B. Dick Products Co. He was laid off by that employer on April 25, 1980. He was also employed part-time by Biltmore Enterprises, Inc. and was laid off by Biltmore in January of 1980.

For reasons set out in the majority opinion, Biltmore is the only employer whose account will be charged with benefits paid to Suntken. These benefits will be based on his full-time employment earnings, even though he was only a part-time employee of Biltmore. Even worse, Suntken will receive benefits from Biltmore despite the fact he rejected Biltmore's offer of substantially the same part-time employment he previously held. This is so manifestly inequitable that it should be permitted only if there is no other possible result. I believe there is.

The majority contends several of the issues raised are not here for review because not presented before the agency. I disagree. I believe Biltmore's argument concerning fairness and the effect of part-time employee status was sufficient to put these matters before the agency, particularly in view of the informal rules governing such proceedings.

The difficulty with this case arises, of course, because of the multiple jobs Suntken held. We have recognized the special problems this poses and have pointed out that "the interpretation" may be necessary to meet "the problem of dual or multiple concurrent employment . . . to meet more complex conditions." *McCarthy v. Iowa*

*Employment Security Commission,* 247 Iowa 760, 765, 76 N.W.2d 201, 204 (1956). In that case, too, we noted particularly that in such instances we should "consider the result to the employer, not [as] controlling but [as] proper to take into account." *Id.*

Here we have the anomalous situation of a part-time employer being compelled to pay benefits on the basis of full-time employment elsewhere to one who has refused an offer of comparable re-employment. I believe this calls for special treatment under the *McCarthy* rationale. I find the majority's effort to escape the impact of *McCarthy* by conjuring up meaningless distinctions is contrary to the claim and obvious thrust of that decision.

It is clear beyond doubt under the record that Suntken refused Biltmore's offer of employment because it paid only $117 per week, while he could obtain $131 per week for *not* working. Small wonder he would rather—as he said—"go have fun on my [motorcycle]." He added another reason for rejecting Biltmore's work offer, a quite ingenious one. If he was *working,* he would have no time to *look* for work. This claim was advanced although his maximum work period with Biltmore would have been 36 hours per week, leaving 132 hours, or some reasonable portion thereof, "to look for work." Unlike the majority, I fail to find this is substantial evidence to support Suntken's right to benefits.

I am convinced this case should be reversed under the authority of *McCarthy v. Iowa Employment Security Commission.* If necessary—although I do not find that it is—I would also reverse because the interpretation by the trial court, and affirmed by the majority, leads to the kind of strained, impractical, and absurd results we have frequently eschewed in statutory construction. *Ida County Courier and The Reminder v. Attorney General,* 316 N.W.2d 846, 851 (Iowa 1982); *Iowa Beef Processors, Inc. v. Miller,* 312 N.W.2d 530, 532–33 (Iowa 1981); *Hamilton v. City of Urbandale,* 291 N.W.2d 15, 19 (Iowa 1980); and *Steinbeck v. Iowa District Court in and for Linn County,* 224 N.W.2d 469, 476 (Iowa 1974).

If any proof is needed that the result *is* strained, impractical and absurd, it may be found in the majority's gratuitous statement that it would make no difference if Suntken had been offered full-time employment at the same hourly rate as before his discharge. It is incredible the legislature intended any such result; it is even more incredible that the majority attributes such a meaning to the statute.

I think it was error to charge Biltmore's account for Suntken's benefits.

HARRIS and McGIVERIN, JJ., join this dissent.